SEAVER E. OLSON v. CARL C. SCHULTZ.[1]

April 13, 1897.

Nos. 10,380—(268).

**Freight Elevator—Liability of Landlord.**

  Where a portion of a building is let, and the tenant has the right to the use of the elevator in common with the landlord and the other tenants, such elevator to be operated by the tenant when required by his business necessities, and the landlord expressly covenants in the lease that he will keep the elevator and approaches in constant repair and in perfect condition for the lessee's use, and the landlord retains the general control over the elevator and its approaches, there is no such leasing as will exonerate the landlord from all responsibility for the safe condition of the elevator.

**Same—Sufficiency of Evidence.**

  Evidence considered, and *held* that the lessee's agent did not have sufficient notice of the unsafe condition of the elevator to create a liability on the part of the lessee as being guilty of contributory negligence.

  Appeal by defendant from an order of the district court for Hennepin county, Elliott, J., refusing a new trial after a verdict for $500. Affirmed.

  *Choate & Merrill*, for appellant.

  A lessor who agrees to repair cannot be charged with a breach of the agreement without notice of need of repairs. Moore v. Clark, 5 Taunt. 90, 95; Holton v. Waller, 95 Iowa, 545, 64 N. W. 633; Wolcott

  [1] Reported in 70 N. W. 779.

v. Sullivan, 6 Paige, Ch. 117; Cooke v. England, 27 Md. 14; Ploen v. Staff, 9 Mo. App. 309; Taylor, L. & T. § 330; Wood, L. & T. (2d Ed.) § 374; 3 Sutherland, Dam. § 873. But in the present case the language of the lease contemplates notice.

In the absence of any agreement to the contrary the rule of damages is either the cost of repair by the lessee, or the difference in value in the use of the premises between the condition in which they are and that in which they were to be put. Long v. Gieriet, 57 Minn. 278, 59 N. W. 194; Arnold v. Clark, 13 Jones & S. 252; Cook v. Soule, 56 N. Y. 420; Blanchard v. Ely, 21 Wend. 342, 347; Dorwin v. Potter, 5 Denio, 306; Sparks v. Bassett, 17 Jones & S. 270; Sedgwick, Dam. § 148; Knowles v. Steele, 59 Minn. 452, 61 N. W. 557; Flynn v. Hatton, 43 How. Pr. 333; Thomas v. Kingsland, 12 Daly, 315; Leavitt v. Fletcher, 10 Allen, 119; Parker v. Meadows, 86 Tenn. 181, 6 S. W. 49.

Negligence of plaintiff is a bar to recovery of any damages resulting from his negligence. Thomas v. Kingsland, 12 Daly, 315; Ploen v. Staff, supra, 311; Flynn v. Trask, 11 Allen, 550; Cook v. Soule, supra; Hamilton v. McPherson, 28 N. Y. 72; Sedgwick, Dam. §§ 201, 202, 204; Flynn v. Hatton, supra; Parker v. Meadows, supra.

*J. F. McGee*, for respondent.

The judgment in Lyman v. Olson is conclusive: (1) that the elevator was in an unsafe condition; (2) that Lyman was injured by reason of such condition while in the exercise of due care, and (3) that he sustained damages to the amount of $500. Minneapolis Mill Co. v. Wheeler, 31 Minn. 121, 16 N. W. 698; Erickson v. Brandt, 53 Minn. 10, 55 N. W. 62; City of Wabasha v. Southworth, 54 Minn. 79, 55 N. W. 818; City of St. Joseph v. Union Ry. Co., 116 Mo. 636, 22 S. W. 794; Davis v. Smith, 79 Me. 351, 10 Atl. 55; Kip v. Brigham, 6 John. 158; Beers v. Pinney, 12 Wend. 309; Douglass v. Howland, 24 Wend. 55; Thomas v. Hubbell, 15 N. Y. 405; Howe v. Buffalo, N. Y. & E. Ry. Co., 37 N. Y. 297; Village of Port Jervis v. First Nat. Bank, 96 N. Y. 550; Inhabitants of Milford v. Holbrook, 9 Allen, 17; Boston v. Worthington, 10 Gray, 496; Chamberlain v. Preble, 11 Allen, 370; Prichard v. Farrar, 116 Mass. 221; Lovejoy v. Murray, 3 Wall. 1; City of Rochester v. Montgomery, 72 N. Y. 65; McNaughton v. Elkhart, 85 Ind. 384; Miner v. Clark, 15 Wend. 425; Aberdeen v. Blackmar, 6 Hill, 324; Barney v. Dewey, 13 John. 224; Swartwout

v. Payne, 19 John. 294; Chicago & N. Ry. Co. v. Northern L. P. Co., 70 Ill. 217; Veasie v. Penobscot R. Co., 49 Me. 119. The cases cited by appellant upon the measure of damages are not in point.

It is a universal rule that a person injured shall receive compensation commensurate with his damages. 1 Sutherland, Dam. § 12.

BUCK, J. On June 2, 1891, the appellant, Schultz, was the owner of a four-story brick building, with basement, situate in the city of Minneapolis; and on that day he leased the fourth floor of said building, with the privileges and appurtenances thereunto belonging, to the respondent, Olson, for a term of one year, to commence July 1, 1891, for the rental of $50 per month. The third floor of the building was unoccupied, and the remainder of the building was occupied by the North Star Boot & Shoe Company, with equal right to use an elevator in the building in common with the respondent, Olson. This elevator ran from the basement of the building to the top floor, and, when the necessities of each tenant required its use, he furnished his own operator. All the machinery connected with the operation of the elevator was in the basement of the building, except that part of the cable which was in the shaft and overhead the pulleys. Olson leased and used the fourth floor for the purpose of manufacturing overalls and light clothing, and, in connection with this business, used this elevator in carrying freight. The lease, which was in writing, contained a provision,

"The lessor is to keep the elevator and approaches in constant repair, and in perfect condition for the lessee's use: provided that, if said premises shall have become untenantable without the fault of said lessee, then in that case said lessee shall be released from the obligation of this lease, unless said lessor, after receiving seasonable notice from said lessee, cause said premises to be repaired and put in suitable condition for occupancy within a reasonable time after receiving said notice."

It was also further provided by the terms of the lease that "the lessor may enter at any and all times to view and make improvements and suitable repairs." During the term of the lease the third floor of said building, although unoccupied, was under the control of the defendant, Schultz, and during said term there was a hall and stairway running from the street to the fourth story of said building. On January 12, 1892, one Lyman, an employé of respondent, who operated the elevator when it was used by respondent, had used the elevator, and for

some purpose stepped from it, leaving the floor of the elevator cage even with the fourth floor of the building, and was absent for some time; and when he returned he found that the elevator platform had crept up some distance, and, when he stepped upon it, it instantly fell to the bottom of the shaft, a distance of about 75 feet, injuring said Lyman.

Afterwards Lyman brought a suit against the respondent, Olson, in the United States circuit court, to recover $5,200 damages for the injuries sustained by him by reason of the fall of said elevator; alleging that said elevator was defective, unsafe, and out of repair. Thereupon the respondent duly notified the appellant of the pendency of the action, and required him to appear and defend it, but the latter did not do so, whereupon this respondent did duly appear and defend said action, the result of which was a verdict in favor of Lyman for the sum of $500, which, with the costs and expenses of the trial, amounted to the sum of $1,038.64, which respondent paid; and he brought this action to recover from the appellant the said amount, on the theory that the failure of the appellant to perform his covenant to keep the elevator and approaches in constant repair and perfect condition for the lessee's use resulted in the accident to Lyman on January 12, 1892, and that the respondent, as master, being primarily liable to his servant, Lyman, had a remedy over against appellant on the said covenant, to recover the amount he was obliged to pay Lyman. This view of the law was sustained by the trial court, and judgment ordered by it in favor of plaintiff accordingly, and this appeal is taken from an order denying a motion for a new trial.

The counsel for the appellant has devoted considerable space in his brief to a discussion of the question of whether the elevator was out of repair on and prior to January 12, 1892, the date of the accident. We are of the opinion that this question was determined adversely to the contention of the appellant in the former action, and that the judgment entered in that action concludes the appellant herein, as that was one of the very questions litigated in that action. The complaint in the former action of Lyman v. Olson contains an allegation that the elevator was in an unsafe and dangerous condition, and unfit for use, at and for some time prior to the time of the injury to Lyman. We are also of the opinion that the question of Lyman's being injured

by reason of such defective condition of the elevator, and the amount of damages which he thereby sustained, were settled by the verdict and judgment entered thereon in the former action, and are not now open for discussion or adjudication upon the merits in this action.    Schultz had due notice of the pendency of that action, and was afforded an opportunity to appear and defend, which he neglected and refused to do, and he was as effectually concluded thereby as though he had duly appeared therein and contested these questions upon the merits.    City of Wabasha v. Southworth, 54 Minn. 79, 55 N. W. 818; Erickson v. Brandt, 53 Minn. 10, 55 N. W. 62.

The most serious question arises upon the fifth finding of the trial court, which is as follows:

"That subsequent to the time plaintiff took possession of said premises, and some days prior to January 12, 1892, unknown to the defendant, a bolt in the arm in the top of said elevator cage, through an opening in which the steel cable used in starting and stopping the elevator passed, was lost out, so that said arm, when said elevator reached the fourth floor, would not come against the button fastened to said steel cable, but would allow the same to creep about twelve inches above said floor; but notice of the condition of said elevator was never given to the defendant, and no demand was ever made on the defendant to repair the same.    That at the time of said injury, and while said elevator was out of repair, neither the plaintiff nor defendant herein knew the said elevator was out of repair.    That plaintiff's factory in said building was under the charge of Mr. Shotwell, who was the manager of said factory on behalf of the plaintiff, and, as such manager, had charge of all the operations carried on by plaintiff in said factory, and of all the workmen employed therein.    That said Shotwell, for several days prior to the injury suffered by Lyman, had notice that said arm was out of repair as above stated.    That the plaintiff was not in immediate supervision of said factory, and visited the same but two or three times during the term of said lease.    That the absence of said bolt or of the arm would not affect the operation of the elevator, or cause it to fall, if the guide strips, being maple strips two by two inches, which should run from the bottom to the top of the elevator shaft, had been properly constructed so as to run to the top of the shaft, thereby preventing the elevator shoes which operate on said guides from getting off the guides and 'hanging up' the elevator cage, by reason of said shoes getting on the top of said guides.    That said guide strips did not run to the top of the elevator shaft, but stopped some distance below that point."

In order to determine upon whom the liability rests in this action we may properly consider three points:    (1) Who had control and

possession of the elevator and the machinery necessarily connected with its operation, and the right to make constant repairs and keep it in perfect condition for the lessee's use? (2) Was it the duty of the lessor, under the covenants in the lease, to keep the elevator in constant repair and perfect condition, irrespective of the question whether he had notice of its being out of repair? In other words, was he liable for injury resulting from its being out of repair without his having knowledge of such defect? (3) Was Shotwell's notice of the defective condition of the elevator sufficient to charge plaintiff with contributory negligence, in not giving notice thereof to defendant?

The only control or possession which plaintiff had over the elevator was that his operator might stand upon the platform while operating it in carrying plaintiff's merchandise. The other tenants had the same right. So far as appears from the record, the entire machinery connected with the operation of the elevator was under the management and in the possession and under the control of the defendant. The premises designated in the lease as those rented are "the fourth floor of the four-story brick building known as being 'Numbers 121 and 123 Washington Avenue North.'" The elevator was not leased to Olson, but only its mere use during such time as he needed it to convey his merchandise either up or down. At other times the North Star Boot & Shoe Company or the defendant had a right to its use. Olson's control of the elevator was a mere easement or right to transport his goods back and forth as his necessities occasionally required. It does not appear that the other tenant had any greater right in the elevator.

As the defendant was the owner of the building and elevator, and the third story not rented, the presumption is that he had the absolute control and possession of the elevator at all times, subject only to the tenant's right of carrying goods as above indicated. Hence he had the legal right and the actual opportunity to make all necessary repairs and keep the elevator and its machinery in perfect condition, irrespective of the covenant and reserved privilege in the lease to do so. Olson had no right and was under no legal obligation to repair the elevator. He had no right to go to the basement or other stories for the purpose of repairing it, nor, as against other tenants, to stop its running for such purpose.

His right to its use was not exclusive, but a right of passageway in common with the other tenant and the landlord, the latter having gen-

eral control over the elevator; and we are of the opinion that the leasing of the fourth story of the building, under such circumstances, does not exonerate the defendant landlord from responsibility for the safe condition of the elevator under the specific covenant in the lease. It was put there for a specific purpose.    The evidence shows the necessity for keeping it in this condition to enable the lessee to carry on his business, and to guard against injury to persons lawfully using it. And this covenant applies to the condition in which the landlord was to keep the elevator during the term of the lessee's lease.    It did not concern the lessee as to the condition of the elevator at the date of the lease, June 2, 1891, but it was of vital importance to him as to its condition during the year for which he rented the premises, commencing July 1, 1891.

There is no merit in the contention of appellant's counsel that the elevator was to be kept in the same condition as when the lease was executed.    Such a construction is not within the spirit or language of the lease.    To keep an elevator and approaches in constant repair and perfect condition for the lessee's use does not mean that it may be in a defective and unsafe condition at the commencement of the lessee's term, and that it may be permitted to remain so, continually endangering human life.    If it was not in repair and perfect condition, it was the duty of the landlord to put it in that condition at or before the commencement of the lease, and keep it so during the term.    Myers v. Burns, 35 N. Y. 269–271.

Nor was it necessary to show that the defendant had actual knowledge of the defect.    His duty was that of care, and ignorance of the defect was no defense.    Lindsey v. Leighton, 150 Mass. 285, 22 N. E. 901, and cases there cited.    This obligation is the result of an express contract between the parties; the landlord reserving to himself the control' over the elevator, and the right and obligation to repair it and keep it in repair, and the lessee having no control over it except at times when he was occasionally actually using it.    The right to use the elevator had been divided by the landlord among different tenants and himself for the purpose of making money for himself, and for this purpose he had made a passageway common to all, as an inducement and accommodation to those leasing the premises; and the tenant, under the contract, was not bound to repair, but the landlord, by an express contract, had agreed to do so.    If we should apply the

rule as settled in some jurisdictions, that the obligation to repair depended upon the right of possession, the defendant would still be liable; but, in addition to this liability, there is one by express contract. In the case of Looney v. McLean, 129 Mass. 33, it was ruled that:

"Where a portion of a building is let, and the tenant has rights of passageway over staircases and entries in common with the landlord and the other tenants, there is no such leasing as will exonerate the landlord from all responsibility for the safe condition of that portion of which he still retains control, and which he is bound to keep in repair. As to such portion he still retains the responsibilities of a "general owner to all persons, including the tenants of his building." The case shows that the plaintiff had a simple right of access to the shed over this staircase, as incident to her occupation of the premises leased to her. The duty of the defendant, having still the possession and control of the same, was to protect her from injury in that right, by the use of reasonable care on his part. The stairway was apparently intended to furnish a passageway for her use, and the defendant is responsible for injuries received by one entering upon the same by his invitation or procurement, express or implied. Sweeny v. Old C. & N. R. Co., 10 Allen, 368; Elliott v. Pray, 10 Allen, 378. The fact, if proved, that the plaintiff had previous knowledge that the stairs were in a dangerous condition, would not be conclusive evidence that the plaintiff was not in the exercise of due care. Whittaker v. West Boylston, 97 Mass. 273; Reed v. Northfield, 13 Pick. 94."

In the case at bar it is conceded that Olson had no actual notice of the defective condition of the elevator, and his right of action is challenged upon the ground that Shotwell, the manager of Olson's factory, knew that the elevator was out of repair, and that such knowledge on the part of Shotwell is in law imputable to Olson, and, hence, that Olson's contributory negligence precludes his recovery against Schultz. But the failure to bind Olson in this respect rests upon the insufficiency of the finding of facts. Shotwell was the manager of the factory and its operations, and in charge of the workmen employed therein, but not of the elevator. It nowhere appears that he had any control, possession, or management over the elevator or over Lyman, who operated it occasionally.

The finding of fact by the trial court is that Shotwell knew that a bolt in the arm of the elevator case, through an opening in which the steel cable used in starting and stopping the elevator passed, was lost out, so that said arm, when the elevator reached the fourth floor, would not come against the button fastened to said steel cable, but would allow the same to creep about 12 inches above said floor. This is

the extent of Shotwell's knowledge or notice of any defect in the elevator. This alone was not the cause of the injury to Lyman, nor did Shotwell know or have reason to believe that this condition of the elevator was dangerous, in its use, either to person, life, or property. In fact, the trial court found that the absence of said bolt or the arm would not affect the operation of the elevator, or cause it to fall, if the guide strips (being maple strips two by two inches) had been properly constructed so as to run to the top of the shaft, thereby preventing the elevator shoes which operated on the guides from getting off the guides and hanging up the elevator cage by reason of the shoes getting on top of the guides, and that said guide strips did not run to the top of the elevator shaft, but stopped below that point.

Shotwell did not have the slightest knowledge or notice of these facts, the existence of which constituted the primary cause of the injury, and were evidently defects which existed in the original construction of the elevator, and chargeable to the owner of the building. Such being the case, the owner is presumed to know of these defects, and notice thereof need not be given him, to render him liable. Certainly, a tenant who has no knowledge of such defects, and is not bound to know them, is not chargeable with negligence in not giving the landlord notice thereof. The facts therefore fail to show any knowledge upon the part of Shotwell, as manager of Olson, which could be imputed to the latter, and conclude him from maintaining this action, upon the ground of contributory negligence.

Some controversy has arisen upon the phraseology found in the original lease, which we have examined, and have no hesitation in saying that the notice therein required to be given by the lessee in case the premises became untenantable relates to the fourth floor, rented for business purposes, and not to the elevator; and the covenant to keep in constant repair and in perfect condition relates only to the elevator, and binds the landlord to keep it in that condition, without notice being required on the part of the lessee of any defects existing therein.

Our conclusion is that the order denying the motion for a new trial should be affirmed, and it is so ordered.

CANTY, J. (dissenting). I cannot concur in the majority opinion in this case. Defendant's covenant did not, in my opinion, make him an insurer of the safety at all times of the elevator. He was liable

only for failure to exercise proper care in keeping the elevator in repair. If plaintiff had exclusive possession of the elevator, defendant would not, under the authorities, be liable until after he was notified of the necessity for repairs. But plaintiff did not have possession at all. On the contrary, defendant had possession, and it was the latter's duty to use reasonable care and diligence to discover the want of repair. This the evidence tends to prove he did not do. There is evidence to sustain a finding that defendant was guilty of negligence which caused or contributed to the injury for which plaintiff was compelled to pay damages, and defendant is therefore liable over to plaintiff, unless the latter is guilty of contributory negligence. In my opinion, the plaintiff's foreman was guilty of negligence which contributed to the injury; and, on the doctrine of respondeat superior, plaintiff is responsible for this negligence. The trial court found:

"A bolt in the arm in the top of said elevator cage, through an opening in which the steel cable used in starting and stopping the elevator passed, was lost out, so that said arm, when said elevator reached the fourth floor, would not come against the button fastened to said steel cable, but would allow the same to creep about twelve inches above said floor. * * * That plaintiff's factory in said building was under the charge of Mr. Shotwell, who was the manager of said factory on behalf of the plaintiff, and, as such manager, had charge of all the operations carried on by plaintiff in said factory, and of all the workmen employed therein. That said Shotwell, for several days prior to the injury suffered by Lyman, had notice that said arm was out of repair as above stated."

The further findings of the court show conclusively that this arm, being out of repair as above described, was one of the concurring causes resulting in the fall of the elevator and the injury of Lyman. As regards the matter in question, Shotwell was as much the representative of plaintiff as it was possible for him to be, and therefore notice to him was notice to plaintiff. He not only had notice that the bolt had fallen out of the arm, but notice "that said arm was out of repair as above stated," which includes notice that the arm would not stop the elevator at the proper place, "but would allow the same to creep about twelve inches above said floor." It is true that the court finds that the defective condition of this arm would not have caused the elevator to fall, were it not for the defective condition of the guide strips, which were too short to reach as high as the elevator might ascend when the automatic stop did not act. But this is merely find-

ing that the defective condition of the arm and the defective condition of the guide strips each contributed to cause the fall and the injury. If plaintiff (through Shotwell) was guilty of negligence which contributed to the injury, it is no excuse to say that, as respects other parts of the appliance (to wit, the guide strips), defendant was guilty of negligence which also contributed to the injury.

Again, it does not appear that Shotwell knew that the guide strips were too short, and that the guides would get off the guide strips by reason of the defective condition of the arm, and thereby cause the elevator to fall. But Shotwell had good reason to know, and must be held to have known, that the defective condition of this arm made it dangerous, and was likely to result in some kind of an accident. That he did not know and could not anticipate the particular accident which occurred, makes no difference. The rule of Hadley v. Baxendale, 9 Exch. 341, does not apply to such cases. While as between plaintiff and his servant, Lyman, it was plaintiff's duty to use at all times proper care to inspect and repair the appliances furnished the servant in the performance of his duties, and plaintiff could not delegate this duty to defendant, yet, as between plaintiff and defendant, it was not plaintiff's duty to inspect or repair the appliances in question, but it was defendant's duty to do both. Therefore, if, by reason of the failure of plaintiff to use proper care in inspecting and repairing this elevator, his servant was injured, and he was compelled to pay the servant damages therefor, defendant would be answerable over to plaintiff for what he paid. Because what was plaintiff's duty, as between him and his servant, was defendant's duty, as between him and plaintiff.

But this is not the question here. Here the plaintiff is charged with something more than a failure to inspect and discover, the defect in question. He already had notice of that defect, and, notwithstanding such notice that the elevator was dangerous, he permitted his servant to use it for several days, and this resulted in the injury in question. He was, as between himself and defendant, guilty of negligence in permitting the elevator to be used after he had notice that it was in a dangerous condition, and this negligence contributed to the injury. For this reason, plaintiff is not entitled to recover. The oral evidence and admissions of the parties on the trial prove conclusively the facts found by the court, on which this result is reached.

However, respondent contends that this defendant, having received

notice to defend the action brought by Lyman against this plaintiff, is bound by the result of that action. The proceedings in that action were introduced in evidence in this, and show that one of the issues presented the same state of facts as the oral evidence and admissions above referred to, viz. that this plaintiff (through Shotwell) had notice that the elevator arm was out of repair, and would not perform its function of automatically stopping the elevator. Under this issue, the evidence that plaintiff (through Shotwell) was negligent in failing, after receiving such notice, to prohibit the use of the elevator by his servants, would have sustained a verdict in Lyman's favor in that case. For this negligence this defendant was not responsible or answerable over to this plaintiff, and therefore the result of that action is not conclusive between the parties to this action.

The order appealed from should be reversed.

MITCHELL, J. I fully agree with Justice CANTY as to the legal principles applicable to this case, but am not able to concur in the construction which he places upon the finding of the trial court, as amounting to a finding that Shotwell was guilty of negligence. It is true that, according to the findings, the absence of the bolt in the arm in the top of the elevator, of which Shotwell had notice, was one of the concurring causes of the fall of the elevator. But it does not necessarily follow that Shotwell was negligent in allowing the elevator to be used in that condition. The court finds that, but for the defective condition of the guide strips, of which Shotwell had no notice, the absence of this bolt would not have caused the elevator to fall. It is no doubt true that if Shotwell knew, or ought, in the exercise of reasonable care, to have known, that the elevator was dangerous and liable to result in injury to those using it, then he was guilty of contributory negligence, although he had no reason to anticipate the particular accident which did occur. But there is no finding that the mere absence of this bolt rendered the elevator unsafe, or that Shotwell had any reason to suppose it did. The finding is merely to the effect that he knew "that said arm was out of repair as above stated." Even if this implies that he also knew that this would allow the elevator "to creep about 12 inches above said floor," this does not amount to a finding, either express or implied, that he was guilty of any negligence in permitting it to be used in that condition. Plaintiff's con-

tributory negligence, personal or imputed, was an affirmative defense, the burden of proving which was on the defendant.

For these reasons I concur in the result arrived at in the opinion of the court affirming the order appealed from.