# A. D. BROWN v. JOHN N. SMITH and Another.[1]

April 18, 1913.

Nos. 17,938—(78).

**Negligence — questions for jury.**

Plaintiff was a stationary engineer, and spent his time in the engine room of a six-story building. Defendants were plumbers, and were employed by the first-story tenant to change the plumbing on the first floor. In so doing they left in the space between the first floor and the basement ceiling, and immediately over plaintiff's place of work, an open sewer pipe connected with a main sewer. There was an opening in the basement ceiling at this point through which the air might circle down from the open sewer pipe to the basement. Some time thereafter plaintiff grew gradually ill and was finally obliged to quit work. Other witnesses detected bad air in the vicinity of this open pipe. Plaintiff's physician could find nothing to account for his illness. He testified that he knew the man was poisoned, but could not find the cause. After twenty months this open pipe was discovered and was at once closed. The physician then treated plaintiff for sewer air poisoning, and his health gradually improved. This physician gave the opinion that sewer air would fully account for plaintiff's illness. Another physician, who examined the premises and heard the testimony, testified that under the conditions existing sufficient sewer air might come into the basement room to cause plaintiff's illness, and that, in view of the absence of any other cause, sewer air from this sewer pipe was the reasonably probable cause thereof. It is *held:*

(1) Under the facts stated, defendants are liable to plaintiff in damages if they negligently left this sewer pipe open, and if plaintiff's illness was caused by sewer gas emitted therefrom. The question of their negligence should have been submitted to the jury.

(2) The question whether plaintiff's illness was caused by breathing sewer gas or sewer air emitted from this sewer pipe should have been submitted to the jury.

[1] Reported in 141 N. W. 2.

Note.—The authorities on the liability of a contractor to third persons for defects in his work after its completion and acceptance are reviewed in notes in 26 L.R.A. 504 and 32 L.R.A.(N.S.) 968.

As to the liability of an independent contractor to a tenant for injury caused by defects in building, see note in 21 L.R.A.(N.S.) 477.

Action in the district court for Hennepin county to recover $6,500. The facts stated at the beginning of the opinion were set up in the complaint. The defendants admitted that, by their workmen, they did certain plumbing work in the building described at the request of and under the direction of the Five and Ten Cent Store, and did no other work there, and that the work was accepted and paid for. The case was tried before Jelley, J., who at the close of plaintiff's case, granted defendants' motion for a directed verdict. From an order denying plaintiff's motion for a new trial, he appealed. Reversed.

*Francis P. Harl,* for appellant.

*Benton, Molyneaux & Morley,* for respondents.


HALLAM, J.

Plaintiff was a stationary engineer in the Albion Hotel on Nicollet avenue in Minneapolis. This hotel occupied the upper stories of a six-story building. The first and second stories were occupied by a five and ten cent store. The engine room was in the basement. A water-closet stood on the first floor immediately over the place in the engine room where plaintiff was stationed and where he spent most of his time. In March, 1910, the proprietors of the Five and Ten Cent Store were desirous of moving this water-closet to the basement. Defendants are plumbers, and they were employed for that purpose. They removed the closet, and in so doing left the sewer pipe open. This pipe was directly connected with the Nicollet avenue sewer, which at this point is a small sewer. This pipe was between the floor of the store and the ceiling of the basement. The opening in the pipe was immediately over plaintiff. The ceiling of the basement was of tile. There was an opening in the ceiling at this point, where a pipe went through from the basement to the first floor. At this opening there was a space between the pipe and the tiling sufficient to permit the air to circle down through, from the place where the open pipe was located, to the engine room beneath.

Plaintiff brings this action against defendants on the theory that sewer gas or sewer air escaped from this open sewer pipe and made its way down into the furnace room through this opening in the ceiling, causing injury to his health, and that the act or omission of

leaving this pipe open was negligence, for which defendants are liable to him in damages.

It appears that in summer plaintiff spent but a small part of his time in the furnace room, and this was true of the summer of 1910. In the fall and winter and early spring he spent most of his time there. Plaintiff was at this time about 42 years of age. He testified that he had always been a healthy man. He further testified that in the winter of 1910-1911 he commenced to get thin and run down in health. By April or May he got so he could not perform his duties, and secured a nephew to fire up for him. In August he said he "got clear down," but did some of his work until the middle of August. After that time he was not there at all for two or three months. He came back sometime in October, but did not do much of anything, except to give directions as to what was to be done, and was not able to work until the twenty-sixth of December, 1911. There is evidence that during this time he was troubled with indigestion, loss of appetite, nerves and muscles all gone, headache all the time, and was dazed so that he could not go out alone.

In November, 1911, he discovered this open pipe and reported it to defendants, who at once caused it to be closed. Since that time he has grown gradually better and has gained 30 pounds in weight.

Another witness, Sisco, who worked with plaintiff at times, testified that he started to work in October, 1910; that after working a few days he "got dizzy and couldn't get around good." In December he gave out entirely, got dizzy, and fell over. He had, however, been a sufferer from locomotor ataxia for many years.

Plaintiff never at any time detected any foul smell. Sisco testified that sometimes he would smell something, but never had any idea what it was; and witness Roos, manager of the Five and Ten Cent Store, testified that in the summer of 1911 there had been bad air in that corner of the store, and that the clerks had complained of it. There is evidence, also, that sewer air does not necessarily create a foul odor.

Dr. Leonard, plaintiff's attending physician, testified that plaintiff came to him in June, 1911; that he treated him from that time until November; that he at first treated him for a grippy cold; that plain-

tiff did not seem to rally, and was more prostrated than grippe would cause. He concluded the trouble was not grippe, and there was no explanation for his condition. He testified that he was searching for some other cause; that he knew the man had been poisoned, but could not find the cause. After he learned of the conditions under which plaintiff had been working, he treated him for sewer gas or sewer air poisoning, that plaintiff began gradually to get better, and that there had been a marked improvement in the three months before the trial in May, 1912. He testified that he had had experience with the effect of sewer gas on the human system, and that plaintiff's ailment could be accounted for by sewer gas poisoning; that the ailment might come from other causes, but not from any causes that were present in this case.

Dr. Evans testified that he had seen the sewer pipe in question and the opening in the basement ceiling; that it was possible for sufficient sewer air to be exuded through that opening and disseminated through the room in which plaintiff was to cause the illness from which he suffered; and that, with Dr. Leonard's testimony that he had examined plaintiff for any other cause and found none, he should say that sewer gas was the reasonably probable cause of plaintiff's difficulty.

The terms "sewer gas" and "sewer air" are used both by counsel and by witnesses somewhat indiscriminately. It appears that, properly speaking, sewer gas is a gas arising from decomposition of organic matter when confined; that sewer air is the air of a sewer, and may not contain sewer gas. There is testimony that sewer air is bad air, especially when the sewer is small, as it is at this point on Nicollet avenue, and, if breathed day after day, may cause the impairment of health here complained of.

At the conclusion of plaintiff's evidence, defendants moved the court to direct a verdict in their favor on two grounds: First, that defendants are not liable to plaintiff, even if they were negligent; second, that there is no evidence in the case reasonably tending to support the conclusion that the sickness of the plaintiff resulted from the negligence of the defendant, or from breathing sewer gas. The trial court sustained both contentions, and granted defendants' motion for the direction of a verdict.

The court erred in directing a verdict for defendants.

1. It is undoubtedly the law that defendants are liable, if they did negligently leave this sewer pipe open, and if plaintiff's illness was caused by sewer gas or air emitted therefrom. These parties were strangers to each other. There was no contract relation between them. But this is not decisive of their duties one to another. It is laid down as a general rule that "whenever one person is by circumstances placed in such a position with regard to another that every one of ordinary sense who did think would at once recognize that, if he did not use ordinary care and skill in his own conduct with regard to those circumstances, he would cause danger of injury to the person * * * of the other, a duty arises to use ordinary care and skill to avoid such danger." O'Brien v. American Bridge Co. 110 Minn. 364, 367, 125 N. W. 1012, 32 L.R.A.(N.S.) 980, 136 Am. St. 503. The present case is within this rule, and the question of negligence should have been submitted to the jury.

2. Under the foregoing facts, the question whether plaintiff's illness was caused by the breathing of sewer gas, or sewer air, emitted from this sewer pipe, should have been submitted to the jury. The facts in evidence and the opinion evidence, taken together, made the case a fair one for the jury to determine. If the facts were as stated, and the opinions given were correct, plaintiff was entitled to recover. It may be that, without the opinion evidence, no case was made out. But it often occurs that some essential part of a case must rest on opinion evidence. The opinions in this case are not conjectural. They are reasonably positive, and are not on their face inherently improbable. They are the opinions of skilled and reputable men. The jury would not be bound to accept them as correct, but it is not for the court to reject them as false.

Order reversed.