## GEORGE STALEY v. THEO. HAMM BREWING COMPANY AND OTHERS.

### THEO. HAMM BREWING COMPANY, APPELLANT.[1]

May 16, 1919.

No. 21,171.

Negligence — of tenant in respect to automatic gate to elevator shaft — evidence.

A gate designed to close the opening in an elevator shaft automatically when the elevator was moved up or down, was defective and frequently

[1]Reported in 172 N. W. 491.

failed to drop into place. It was the duty of the owner of the building containing the elevator to keep it in repair. He failed to do so. Part of the building was occupied by tenants. They and their employees knew of the defective condition of the gate. Appellant was one of the tenants and had a right, in common with the other occupants of the building, to use the elevator as an adjunct to its business. Respondent came upon the premises, at the invitation of one of appellant's cotenants, to deliver goods to such cotenant. There was evidence tending to show that just prior to his coming an employee of appellant had taken the elevator to the second floor and that the gate had not dropped into place. Respondent fell into the open shaft and was injured. *Held*:

(1) That the evidence would justify a jury in finding that appellant's employee operated the elevator in a negligent manner.

(2) That he was operating it in the course of his employment and not for purposes personal to himself.

(3) That respondent was rightfully on the premises.

(4) That the failure of the owner of the building to keep the gate in repair did not absolve his tenants from responsibility for the negligence of their employees while operating the elevator, and that such tenants had possession and control of it for the purpose of operating it as an adjunct to their business.

(5) That respondent was not guilty of contributory negligence as a matter of law.

(6) That the evidence as a whole was sufficient to sustain a verdict in his favor.

**Same — charge to jury inaccurate — error harmless to appellant.**

2. The court instructed the jury that respondent could not recover, unless he came upon the premises at the invitation, express or implied, of the person whose negligence was the cause of his injuries. There was no proof that he came at the invitation of appellant. The instruction was erroneous in that it stated the law too favorably to appellant and unduly limited respondent's right of recovery. The error was not prejudicial to appellant and it cannot attack the verdict as contrary to the law and the evidence on the ground that this instruction became the law of the case and that hence the verdict cannot be sustained in the absence of evidence showing that respondent came upon the premises at the invitation of appellant.

Action in the district court for Steele county to recover $7,500, for injuries received because of defendants' negligence in failing to guard an elevator shaft and for medical attendance. The separate answer of

defendant brewing company alleged that plaintiff's injuries were due to his own want of care. The case was tried before Childress, J., who at the close of the testimony denied the motion of the brewing company to dismiss the action as to that company and the motion of the same defendant for a directed verdict as to it, and a jury which returned a verdict for $3,000 against the brewing company and in favor of the other defendants. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant brewing company appealed. Affirmed.

*H. J. Charles* and *Norbert Willwerscheid,* for appellant.

*J. A. & A. W. Sawyer* and *F. A. Alexander,* for respondent.

LEES, C.

Action for personal injuries against three defendants, Virtue, the owner of a building where plaintiff was injured, and the Owatonna Liquor Company and the Theo. Hamm Brewing Company, who were tenants of portions of the building. The verdict was against the brewing company only. It appeals from an order denying its motion for judgment notwithstanding the verdict or for a new trial.

The building had two floors and a basement. The liquor company occupied part of the second floor and the appellant part of the first floor and basement. The remainder of the building was under the control of Virtue. There was a covered platform at the rear and an inclosed shaft or well for a freight elevator extending from it to the basement below and the second floor above. The elevator was not leased to appellant, but it had the right to use it in common with the other occupants of the building, and did so use it. The opening from the platform into the elevator well was protected by a gate, which was intended to close automatically when the elevator was not at the platform. On December 27, 1916, and for a considerable time theretofore, the gate was defective and would often stick in the grooves in which it slid up and down. If it stuck after the elevator had been run to the second floor, there was no barrier to prevent persons from stepping from the platform into the elevator well. The condition of the gate was known to all the defendants and also to respondent, a drayman who regularly delivered merchandise to the liquor company.

Between 5:30 and 6 p. m. on the date mentioned, respondent drove up to the platform to deliver some cases of liquor to the liquor company. He picked up a case, and, carrying it in front of him, went along the platform to the elevator and discovered that the gate was up. He testified that this led him to believe that the elevator was at the platform. He put out his foot to feel for it, lost his balance and fell into the well, broke his leg and suffered other bodily injuries. In fact the elevator was at the second floor and the gate had failed to drop into place because of its defective condition.

1. The complaint alleged that the elevator was in the possession and under the control of all of the defendants. The court charged that there could be no recovery against any defendant, unless he had such possession and control when respondent was injured. On this appeal it is urged that there was no evidence that appellant had possession and control of the elevator at or immediately prior to the time of the accident. Several witnesses testified that an employee of the liquor company named Ryan used the elevator shortly before respondent was injured, and that it was not used again until after the accident. On the other hand, one Suddendorf, a former employee of appellant, testified he was working at the platform when respondent drove up with the liquor company's goods; that about 20 minutes before one Duclos, also an employee of appellant, used the elevator to go upstairs; that, when witness saw respondent fall, he called to Duclos to come down, and that he did come down with the elevator and assisted in carrying respondent to a place of safety. It was for the jury to decide whether Suddendorf's testimony was true or false. Their verdict indicates that they believed him. It has the approval of the trial court. We hold that the evidence would sustain a finding that Duclos was the man who last used the elevator before respondent was hurt. If he did, then, even though Virtue was responsible for the defective condition of the gate, the proximate cause of respondent's injury was the failure of Duclos to see that it closed when he ran the elevator to the second floor. His negligence was attributable to appellant, if he was then using the elevator in the course of his employment or in the line of his duty, with a view to the furtherance of its business, and not for a purpose personal to himself. Penas v. Chicago, M & St. P. Ry. Co. 112 Minn. 203, 127 N. W. 926, 30 L.R.A. (N.S.)

627, 140 Am. St. 470; McLaughlin v. Cloquet Tie & Post Co. 119 Minn. 454, 138 N. W. 434, 49 L.R.A.(N.S.) 544; Sina v. Carlson, 120 Minn. 283, 139 N. W. 601.

2. But it is urged that, if Duclos did use the elevator in the manner detailed by Suddendorf, he was using it for a purpose personal to himself. He testified that about 4 p. m. on the day of the accident he went to the office of the liquor company on the second floor to play cards with Ryan and one Spence, another employee of appellant; that he sat at cards with them from the time he went upstairs until called by Suddendorf after respondent was injured. Ryan and Spence corroborated him. He denied having used the elevator at all on that day, but on cross-examination admitted that he had used it at other times. He testified that when he had used it, it was on his employer's business, except on a few occasions, and that if he used it at all on the day of the accident, it was in connection with the business of appellant. As already pointed out, Suddendorf testified that Duclos did use the elevator a few minutes before respondent was injured, and the jury must have found that he did. Other witnesses testified that appellant's employees. frequently went to the liquor company's office to transact business for their employer and sometimes brought up keg beer to be delivered with goods of the liquor company to customers of both companies, and that the elevator was used on such occasions. The evidence as a whole would justify a jury in finding that Duclos did use the elevator in his employer's business immediately prior to the accident.

3. The court charged that respondent could not recover if he "went upon these premises without invitation, express or implied, of the party here guilty of negligence." that if he went there without such invitation he "was a bare licensee * * * and cannot recover" from any defendant who had not invited him to come, "because that party owed him, no duty to look out for his safety." No exception was taken by any of the parties to the giving of this instruction. There was no evidence that respondent went on the premises at the invitation of appellant. He was there solely because of an implied invitation of the liquor company. Was it, therefore, the duty of the trial court to set the verdict aside and grant a new trial?

It was not essential to respondent's right of recovery that he was in-

vited upon the premises by appellant. The complaint alleges an invitation by all the defendants, but it is broad enough to sustain a recovery without proof of such invitation. Responsibility for an injury to one rightfully on the premises might rest upon both the owner and his tenants. The former would be liable for the consequences of his failure to keep the elevator in repair, and the latter for negligence in operating it as an accessory to the conduct of their business. The following cases involved somewhat similar accidents and discuss the liability of the owner and occupants of the building respectively: Kaiser v. Hirth, 46 How. Pr. 161; Donnelly v. Jenkins, 58 How. Pr. 252; Harris v. Perry, 89 N. Y. 308; Malloy v. N. Y. Real Estate Assn. 156 N. Y. 205, 50 N. E. 853, 41 L.R.A. 487; Kent v. Todd, 144 Mass. 478, 11 N. E. 734; Burner v. Higman & Skinner Co. 127 Iowa, 580, 103 N. W. 802. Conceding for the purpose of argument, that it was Virtue's duty to maintain the elevator in a reasonably safe condition for the use of his tenants and others who might be rightfully upon the premises (Olson v. Schultz, 67 Minn. 494, 70 N. W. 779, 36 L.R.A. 790, 64 Am. St. 437; Nash v. Minneapolis Mill Co. 24 Minn. 501, 31 Am. Rep. 349), it does not follow that his tenants owed no duty to anyone. They were not absolved from responsibility for their negligence in operating it because Virtue may have neglected to keep it in repair. The acts and omissions of Duclos made the premises unsafe, and appellant should be held liable for injuries proximately resulting therefrom to a person rightfully thereon, upon the principle of Heaven v. Pender, 11 Q. B. Div. 503, as applied by this court in Moon v. Northern Pacific R. Co. 46 Minn. 106, 48 N. W. 679, 24 Am. St. 194; Kelly v. Tyra, 103 Minn. 176, 114 N. W. 750, 115 N. W. 636, 17 L.R.A.(N.S.) 334; O'Brien v. American Bridge Co. 110 Minn. 364, 125 N. W. 1012, 32 L.R.A.(N.S.) 980, 136 Am. St. 503; Brown v. Smith, 121 Minn. 165, 141 N. W. 2, Ann. Cas. 1914A, 874. The principle has been clearly stated as follows: "Everyone is bound to exercise due care towards his neighbors in his acts and conduct, or rather omits or falls short of it at his peril; the peril, namely, of being liable to make good whatever harm may be a proved consequence of the default." Pollock, Torts, 455.

The instruction now under consideration unduly limited appellant's liability. It was bound to know that strangers might come on the prem-

ises at the invitation of Virtue or the liquor company, as well as at its own invitation and that the safety of anyone so coming was endangered by the act of its employee. Respondent had a right to go upon the premises on the errand which took him there when he was injured, hence appellant might be liable to him, even though it did not invite him upon the premises, and the instruction to the contrary was erroneous.

4. Appellant contends that the erroneous instruction became the law of the case and that we must test the sufficiency of the evidence to support the verdict by the legal principles stated therein. We do not sustain this contention. In none of the cases cited in the briefs was it held that a party may complain of an adverse verdict because there is no evidence to support it under instructions which were too favorable to him. A party who took no exceptions to erroneous instructions cannot have a verdict against him set aside as contrary to law if it was right under the instructions. Such instructions become the law of the case, and, on appeal, the verdict will be judged by the standard they set. The reason for the rule is that a party should not be permitted to take advantage of errors of law occurring during the trial to which he took no exception. Smith v. Pearson, 44 Minn. 397, 46 N. W. 849; Bergh v. Sloan, 53 Minn. 116, 54 N. W. 943; Quinn v. St. Paul B. & Mnfg. Co. 128 Minn. 270, 150 N. W. 919; Kruta v. Lough, 131 Minn. 13, 154 N. W. 514. It is elementary that an appellate court will not reverse, except for clear error prejudicial to the substantial rights of appellant. He must be the aggrieved party and cannot complain of errors that operated to his advantage or did not operate to his disadvantage. Spencer v. Tozer, 15 Minn. 112 (146); State v. Grear, 29 Minn. 221, 13 N. W. 140; Huntsman v. Hendricks, 44 Minn. 423, 46 N. W. 910; Dunnell, Minn. Prac. § 1859.

In the case first cited the court said:

"The jury may have supposed that they were required to find an express promise on the part of defendant. If, under that supposition, they found a verdict for plaintiff, a fortiori they would have done so had they not so supposed. If they have found against defendant under instructions too favorable to him, he cannot complain."

In the second case cited the court instructed that the evidence, if it tended to show anything, tended to prove the crime charged in the in-

406

dictment so that the defendant must be convicted of that or nothing. This court said:

"If the rule given was right, there was no error. If it was wrong, then the prisoner could have suffered no legal prejudice, since, if the jury found the evidence sufficient, it was their duty to convict; * * * and if they did not find it sufficient * * * to acquit. If this was wrong, (as we are inclined to think it was), it gave the prisoner a chance of acquittal to which he was not entitled and of this he cannot complain."

5. The question of contributory negligence was one for the jury. Respondent testified that the platform of the elevator was sometimes a little below the floor, and, seeing the gate up, he thought it might be, in that position and in the darkness felt for it with his foot. He was not guilty of negligence, as a matter of law, in proceeding as he did when injured.

6. The evidence was sufficient to sustain a verdict for respondent against this appellant, and there were no errors of law except in the instruction already considered. All the essentials of legal liability were correctly stated in the charge. Respondent ought not to lose his verdict because the jury were erroneously instructed that he must prove something he did not have to prove in order to make out a case.

Order affirmed.