(Opinion published 55 N. W. Rep. 821.)

------

## MARY A. WRIGHT *vs.* CITY OF ST. CLOUD.

Argued June 20, 1893.   Reversed June 29, 1893.

**Contributory Negligence in Traveling on Icy Sidewalk.**

If a person, with full and present knowledge of the defective condition of a sidewalk, and of the risks incident to its use, voluntarily attempts to travel upon it, when the defect could easily, and without appreciable inconvenience, have been avoided by going around it, he is not in the exercise of reasonable care, but must be presumed to have taken his chances, and if injury results he cannot recover from the city.

Appeal by defendant, the City of St. Cloud, from a judgment of the District Court of Stearns County, *D. B. Searle*, J., entered February 8, 1893, for $700 and costs.

On Sunday morning, February 21, 1892, the plaintiff, Mary A. Wright, went with her husband to the Congregational Church on Fifth Avenue South. In returning from church she went with a Mrs. Whipple along the sidewalk on the west side of Fifth Avenue in front of vacant lot three (3) in block forty-one, (41,) where the snow had not been removed from the walk for a considerable time. The travel over it had packed it down in the track. The adjacent snow had partially melted away. When the weather was mild, deep footprints were left in the track, and it had frozen again, rendering the path rough and uneven. This was in the residence part of the city, six blocks distant from the business portion. The plaintiff saw the condition of the walk but attempted to pass over it. She slipped and fell and was injured. She brought this action, and had a verdict for $700. Judgment was entered, and the city appeals.

*M. D. Taylor,* City Attorney, for appellant, cited: *Henkes* v. *City of Minneapolis,* 42 Minn. 530; *McKellar* v. *City of Detroit,* 57 Mich. 158; *Nason* v. *City of Boston,* 96 Mass. 508; *Broburg* v. *City of Des Moines,* 63 Iowa, 523; *Schaefler* v. *City of Sandusky,* 33 Ohio St. 246; *Wilson* v. *City of Charlestown,* 8 Allen, 137; *Horton* v. *Inhabitants of Ipswich,* 12 Cush. 488; *City of Quincy* v. *Barker,* 81 Ill. 300; *City of Aurora* v. *Pulfer,* 56 Ill. 270; *Belton* v. *Baxter,* 54 N. Y. 245; *Achtenhagen* v. *City of Watertown,* 18 Wis. 331; *Schell* v. *Second Nat'l Bank of St. Paul,* 14 Minn. 43, (Gil. 34;) *Brown* v. *Milwaukee & St. P. Ry. Co.,* 22 Minn. 165; *La Riviere* v. *Pemberton,* 46 Minn. 5; *Erd* v. *City of St. Paul,* 22 Minn. 443; Ray, Negligence, § 128.

*Geo. H. Reynolds,* for respondent, cited: *McLaughlin* v. *City of Corry,* 77 Pa. St. 109; *Todd* v. *City of Troy,* 61 N. Y. 506; *Hall* v. *Manchester,* 39 N. H. 295; *Luther* v. *City of Worcester,* 97 Mass. 268; *Savage* v. *Bangor,* 40 Me. 176; *Cook* v. *City of Milwaukee,* 24 Wis. 270; *Barton* v. *Town of Montpelier,* 30 Vt. 650; *Collins* v. *Council Bluffs,* 32 Iowa, 324; *Dooley* v. *City of Meriden,* 44 Conn. 117; *Cloughessey* v. *City of Waterbury,* 51 Conn. 405; *Congdon* v. *City of Norwich,* 37 Conn. 414; *City of Providence* v. *Clapp,* 17 How. 161; *Paulson* v. *Town of Pelican,* 79 Wis. 445; *Nebraska City* v. *Rathbone,* 20 Neb. 288; *Foxworthy* v. *City of Hastings,* 25 Neb. 133;

*McDonald* v. *City of Ashland,* 78 Wis. 251; *Foxworthy* v. *City of Hastings,* 31 Neb. 825; *Smith* v. *City of Chicago,* 38 Fed. Rep. 388; *Estelle* v. *Village of Lake Crystal,* 27 Minn. 243; *McKenzie* v. *City of Northfield,* 30 Minn. 456; *Nichols* v. *City of Minneapolis,* 33 Minn. 430; *Kelly* v. *Southern M. Ry. Co.,* 28 Minn. 98.

MITCHELL, J.    This was an action to recover damages for personal injuries caused by the alleged negligence of the defendant, in permitting snow and ice to accumulate and remain upon a public sidewalk so as to render it unsafe for travel.

The only question is whether the evidence justified the verdict.

The accident occurred in the latter part of February, in the residence part of the city, about seven squares from its business center. Abutting this part of the sidewalk there was unoccupied property about eighty feet in width.    On either side the occupants had kept the sidewalk in good order, but opposite this property the snow had not been removed during the entire winter, and the result was that it had gradually accumulated to the depth of from one to two feet, through which pedestrians had trodden a narrow, irregular path. As the result of successive falls and drifting of snow, and alternate thawing and freezing, in connection with the continual travel, this path had become quite rough, uneven, and icy, having gradually grown worse as the winter advanced.    As different witnesses described it, "it had hollowed out, and left ridges;" "the humps, holes, and hollows were quite noticeable;" "it had hollowed out places sort of sidling and saucer shaped;" "was full of holes and hummocks from two to four inches deep;" "the bottom was uneven and sidling."    These and similar descriptions clearly photograph in the mind of any one familiar with such things a distinct picture of the irregular and uneven path trodden by pedestrians through snow as frequently seen on neglected sidewalks, in the winter time, in the residence portions of most towns, the condition of which grows gradually worse as the winter advances.

About noon on a somewhat cold, but bright and pleasant, day, the plaintiff was traveling this walk, on her way home from church. She had not traveled this side of the street that winter, and had no previous knowledge of its condition.

On reaching this part of the walk she admits that she looked

at it, and saw its condition before she started across. She says she "had no idea it was as bad as it was," but it is impossible, under the circumstances, that she did not see and understand its general character, and the consequent difficulty in traveling it, and the danger of slipping and falling in doing so. In fact she admits that she saw these ridges and hollows, and that it occurred to her, the minute she reached it, that it was a dangerous place to walk. She knew that the sidewalk on the opposite side of the street (on which her residence was) was in good condition, and that she could entirely avoid the danger by retracing her steps one hundred feet to a street crossing, and going over to the other side of the street; but instead of doing so she proceeded, and, in going across, slipped and fell, and sustained the injuries complained of. The defendant's contentions are (1) that there was no evidence of its negligence; and (2) that the evidence conclusively showed that the plaintiff was guilty of contributory negligence.

Except in Michigan, where it is held that the liability of municipalities for defective streets is purely statutory, and where the same statute applies alike to cities and rural townships, the general, if not universal, doctrine is, that the duty of a city to exercise reasonable care to keep its sidewalks in safe condition for travel is not limited to structural defects, but extends also to dangerous accumulations of ice and snow.

This is implied, if not decided, in *Henkes* v. *City of Minneapolis,* 42 Minn. 530, (44 N. W. Rep. 1026.) In this climate, and in this new state, the duty of cities with respect to ice and snow must necessarily be somewhat limited, and care should be taken that they be not held to a degree of diligence beyond what is reasonable, in view of their situation. What reasonable care might require in a milder climate or in an older country, where cities are more compactly built, might be too high a standard in this climate, for new cities, often embracing within their limits much territory that is more rural than urban. All that is required is reasonable care under all the circumstances, and, in determining whether a defect is actionable, consideration must be had, not only to the danger to be apprehended from it, but also to the practicability of remedying it. No inflexible rule can be laid down as to the condition in which reasonable care requires a city to keep its streets and sidewalks,

with respect to ice and snow. This must depend, in a measure, on climate, amount of travel, means at command for making repairs, and other varying circumstances.

But conceding, what we think the evidence tends to show, that the city was negligent, we think it also appears clearly that the plaintiff herself was lacking in ordinary care. We have held, in common with every other court, that the mere fact that a person attempts to travel a highway after notice that it is out of repair is not necessarily negligence; that this depends on circumstances. *Erd* v. *City of St. Paul*, 22 Minn. 443; *Estelle* v. *Village of Lake Crystal*, 27 Minn. 243, (6 N. W. Rep. 775;) *Kelly* v. *Southern Minn. Ry. Co.*, 28 Minn. 98, (9 N. W. Rep. 588;) *McKenzie* v. *City of Northfield*, 30 Minn. 456, (16 N. W. Rep. 264;) *Nichols* v. *City of Minneapolis*, 33 Minn. 430, (23 N. W. Rep. 868.) But none of these cases were altogether analogous in their facts to the present one. In all of them it will be found either that the traveler had no other practicable road, and had either to pass over the defective way, or abandon his journey, or that, although aware that the road or walk was out of repair, he had no knowledge of the existence of the particular defect which caused the injury, or that the accident occurred in the dark, and that the traveler, although having previous knowledge of the situation, had not presently in mind the existence of the defect, or the consequent risk.

But in the present case, while plaintiff might not have known of the existence or location of any particular hollow or hole in this path, it is very clear from her own testimony that she had full and present knowledge of the precise condition of this part of the sidewalk, and of the risk incident to traveling over it. The only risk was that of slipping and falling, and that was perfectly patent to any one of ordinary intelligence. She simply overestimated her own ability to travel across it without falling. There was no necessity of her going over the defect, but she could have easily, and without appreciable inconvenience, avoided it, by going across to the other side of the street, where the walk was perfectly safe. Under such circumstances she was not in the exercise of reasonable care, but must be presumed to have taken her chances, and having done so, and an injury having resulted, she cannot recover from the city. No different rule as to contributory negligence, or assump-

tion of risks, whichever it is called, is to be applied from that which would be applied to any other case; and, if the plaintiff had exercised half as much care for her own safety as she exacts from the city for the safety of travelers, the accident would never have occurred. *Wilson* v. *City of Charlestown,* 8 Allen, 137; *Schaefler* v. *Sandusky,* 33 Ohio St. 246; *Horton* v. *Inhabitants of Ipswich,* 12 Cush. 488; *City of Quincy* v. *Barker,* 81 Ill. 300.

Judgment reversed.

(Opinion published 55 N. W. Rep. 819.)