MARTIN G. SWENSON v. HAROLD J. SLAWIK.[1]

April 25, 1952.

No. 35,651.

---

[1]Reported in 53 N. W. (2d) 107.

*Robb, Robb & Van Eps,* for appellant.

*Meagher, Geer & Markham, Clyde F. Anderson,* and *Oscar C. Adamson,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action to recover for injuries sustained by plaintiff while operating a freight elevator in the Midway Building, 1951 University avenue, St. Paul, owned and maintained by defendant. At the close of the testimony, the trial court denied defendant's motion for a directed verdict and submitted the case to the jury. The jury returned a verdict in favor of plaintiff. Defendant appeals from the judgment entered after denial of his motion for judgment notwithstanding the verdict.

On December 24, 1948, the date of the accident, the Midway Building contained a restaurant situated on the basement level toward the rear and east side of the building operated by defendant's lessee, William Hawn. It was comprised of several rooms. One of the rooms opened into a portion of the basement, which was devoted to general service of the building, and into a corridor which led to a freight elevator in the northwest corner. The elevator and the ground-level and basement-level doors thereto provided a means of access to the basement corridor and thence to the restaurant.

The ground-level opening, 7 x 7 feet in area, was covered with a heavy corrugated steel door comprised of two sections, divided horizontally through the center, and suspended by means of chains, sprockets, and counterbalances so as to open or close upon the application of manual force to either section. Attached to the lower side of the upper section and on the inside thereof was an iron strip one-fourth of an inch in width.

In addition to the ground-level door, the elevator opened into the remaining floors of the building. All building tenants, including several in the basement, used it and the described openings as a means of ingress and egress for themselves and for deliverymen delivering merchandise to their respective premises. Defendant employed a maintenance man to keep the elevator and the service areaway and corridors near it in repair. At various times this employe was required to remove freight left on the elevator for delivery to tenants.

Within the elevator and on the building walls near its door at the basement level were signs reading:

"NOTICE

"This elevator must not be used unless George Chinock caretaker operates same"

The caretaker named had not been in charge of the building or in the employ of defendant for some time prior to the accident. He was unknown to defendant and to defendant's lessees. There was testimony that the elevator was operated by whoever had occasion to use it with the knowledge and acquiescence of defendant's maintenance man, and that no one employed by defendant was ever present on any occasion to operate it for tenants or deliverymen requiring its use.

Plaintiff, a garbage collector, for about two years prior to the accident had periodically removed the garbage from the restaurant under an oral agreement with the owner. This agreement required that he make approximately three calls a week for this purpose. On the occasion of the first three or four trips, he used a side area-way staircase which led from the first floor to the basement, but had been requested at·that time by a prior lessee to discontinue this practice because of its interference with restaurant customers. Thereafter he entered the restaurant via the ground-level door, thence via the elevator to the basement level through the elevator door there, and along the corridors to the restaurant service room. He used the elevator to take the cans containing the garbage from the basement to the ground-level floor. He then carried them through the door above described to his truck, and used the same route in returning the empty cans to the restaurant. He had used this route with the knowledge and acquiescence of the restaurant owner and of defendant's maintenance man throughout the two years of his contract, and had never been ordered by anyone to discontinue it.

A week or two prior to the accident a web strap, which hung on the inside of the upper section of the ground-level door for use in

closing the door, had been partially removed. A metal handle on this section used for the same purpose had been bent flush against the door so as to render it useless. On the day of the accident, on the occasion of one of his return trips to the basement with the empty garbage cans, plaintiff attempted, in the absence of the described closing devices, to close the ground-level door by pulling downward on the iron strip attached to the lower side of the upper section. The door had become tightly lodged, so that plaintiff was required to exert extra pressure to close it. Upon exerting such extra pressure, the door closed abruptly and the iron strip came down upon the thumb of his right hand, crushing and injuring it so that a part of it had to be amputated.

About a week prior to the accident plaintiff discovered that part of the web strap was missing. It had been removed by defendant's maintenance man in order to prevent strangers from gaining access to the building through the ground-level elevator entrance—an action made possible by grasping the strap from the outside as it fell and hung through the door. For approximately a week before the accident it was difficult to close the door because of its becoming tightly lodged when open. Accordingly, greater manual pressure was required to close it. Although plaintiff was familiar with these conditions, he had been forbidden to use the other entrances to the basement in the performance of his work; as a result, this left him only the described means of access thereto. He had closed the door in the manner described at least 12 or 15 times during the week prior to the accident and had suffered no injury in connection therewith.

On appeal, defendant contends that as a matter of law (1) no duty was owing by him to plaintiff to maintain the elevator in a reasonably safe condition; (2) if such a duty did exist, plaintiff failed to prove any breach thereof; and (3) plaintiff at the time of the accident had assumed the risk or was guilty of contributory negligence.

■ There is a presumption that a landlord retains control over portions of his premises used in common by different lessees of his

property. Such control may be established by direct evidence thereof or by reasonable inferences drawn from the circumstances present. Iverson v. Quam, 226 Minn. 290, 32 N. W. (2d) 596; Rasmussen v. George Benz & Sons, 168 Minn. 319, 210 N. W. 75, 212 N. W. 20; Rose v. Mooers Brothers Inc. 161 Minn. 149, 201 N. W. 303; Barrett v. Lumber Exchange Co. 159 Minn. 326, 198 N. W. 804; Williams v. Dickson, 122 Minn. 49, 141 N. W. 849; Farley v. Byers, 106 Minn. 260, 118 N. W. 1023. Here, the evidence discloses that the elevator, its entrances, and the areas immediately adjacent thereto were used in common by defendant's tenants as a means of access to the basement. It also established that defendant employed a man to maintain the premises thus reserved and to keep them in repair. All this would seem sufficient to sustain a finding that defendant was in actual control of these facilities at the time of the accident.

■ It is also well established that when a landlord thus reserves control of a portion of his premises he is obligated to exercise ordinary care to keep the reserved property in a reasonably safe condition for those entitled and expected to use the same. Iverson v. Quam, *supra;* McGenty v. John A. Stephenson & Co. 218 Minn. 311, 15 N. W. (2d) 874; Anderson v. Winkle, 213 Minn. 77, 5 N. W. (2d) 355; Heinman v. United Properties, Inc. 210 Minn. 343, 298 N. W. 247; 52 C. J. S., Landlord and Tenant, §§ 417(b), 418(a); Restatement, Torts, § 360. It follows that in the instant case the duty rested upon defendant to exercise ordinary care to maintain the elevator, the doors thereto, and the adjacent area in a reasonably safe condition for those entitled to the common use thereof.

■ An examination of the record discloses evidence which, in our opinion, reasonably sustains the finding that defendant failed in the exercise of this duty. A short time prior to the accident his employe had cut away the web strap used in closing the ground-level elevator door. The metal handle also intended for this purpose had been permitted to become so defective as to be useless. In consequence, at the time of the accident, in order to close the ground-level door to the elevator shaft, it was necessary to adopt the

method employed by plaintiff for this purpose. As a result, the accident and injuries followed. These factors, we feel, justified the finding that defendant's maintenance of the equipment as described constituted a failure to exercise ordinary care to keep it in a reasonably safe condition for those for whose use it was intended.

■ Defendant asserts that plaintiff was not a member of the class to whom he owed this obligation. With this we cannot agree. His presence on the elevator and his use and operation thereof for business purposes were at the express invitation of one of defendant's basement lessees. He had been directed by the latter to use this route in performing the duties required of him under his contract. He had been forbidden to use the stairway—the only remaining means of access to the lessee's premises. In using the elevator, it was incumbent upon plaintiff, in the exercise of ordinary care for the safety of others, to close the door of the elevator upon entering it. During the two years prior to the accident in which plaintiff had been engaged in the described work, defendant at no time furnished anyone to operate the elevator. On the contrary, he acquiesced in its use by plaintiff, deliverymen, and others who were required to enter the basement. It is clear therefrom that plaintiff was a lawful invitee on the elevator at the time of the accident, and hence one of those to whom defendant was under obligation to exercise ordinary care in maintaining it and the doorways thereto in a reasonably safe condition. Iverson v. Quam, *supra;* Staley v. Theo. Hamm Brg. Co. 142 Minn. 399, 172 N. W. 491; Farley v. Byers, *supra.*

■ Defendant contends that plaintiff's contributory negligence and his voluntary assumption of the risk of danger were the proximate cause of his injuries, and that because thereof, as a matter of law, a verdict should have been directed against him. He bases this upon the fact that for about two weeks prior to the accident plaintiff knew that the web strap and metal handle on the elevator door had become useless; that the door would stick upon attempts to close it; and that, upon his own admission, he knew on this occa-

sion that if the upper section of the door should close suddenly his thumb might be caught between it and the lower section.

Offsetting this are the facts that plaintiff had no other course to follow; that he had closed the doors in this fashion without mishap or injury on many occasions shortly prior to the accident; and that he had observed others following this procedure in reaching the basement. These factors may have led him to the conclusion that the method adopted might be pursued with reasonable safety. There is no evidence that he acted in a way that was extraordinary or unusual.

The doctrine of assumption of risk is but a phase of contributory negligence. Schrader v. Kriesel, 232 Minn. 238, 45 N. W. (2d) 395; Hubenette v. Ostby, 213 Minn. 349, 6 N. W. (2d) 637. Before it can be said to bar recovery as a matter of law, there must be evidence of an election to follow a certain course of action in which an imminent peril is apparent and may be encountered and a willingness to assume such a risk. Lincoln v. Cambridge-Radisson Co. 235 Minn. 20, 49 N. W. (2d) 1; Schrader v. Kriesel, *supra;* Restatement, Torts, § 360, *comment a.*

We have held that the use of defective premises with knowledge of their defective condition does not establish contributory negligence as a matter of law, particularly where it appears that the defective condition is not so obviously dangerous that a reasonably prudent person in the exercise of ordinary care would deem its usage dangerous. See, Nubbe v. Hardy Continental Hotel System, 225 Minn. 496, 31 N. W. (2d) 332; Restatement, Torts, § 360, *comment a.*

In the instant case, it cannot be said as a matter of law that plaintiff's attempts to close the ground-level door by the method described were so rash and dangerous as to constitute negligence. Any peril in this course was not so clearly apparent as to make his action an election to assume the risk of a known danger. We hold that these questions were properly submitted to the jury, and that there is sufficient evidence to sustain its finding that plaintiff was not guilty of contributory negligence and did not assume the risk

of a known and apparent danger. Schrader v. Kriesel, 232 Minn. 238, 45 N. W. (2d) 395; Foster v. Bock, 229 Minn. 428, 39 N. W. (2d) 862; Nubbe v. Hardy Continental Hotel System, 225 Minn. 496, 31 N. W. (2d) 332.

■ Defendant asserts that plaintiff is barred from recovery because of his violation of M. S. A. 183.35, which provides:

"* * * it shall be the duty of the owner of the building to provide a competent person * * * to regularly operate such elevator [in common use] and no other person shall operate such elevator."

Defendant did not rely on this statute at the trial. He did not call it to the attention of the trial court, nor was it one of the grounds supporting defendant's motion for a directed verdict. It is presented for consideration here for the first time. In view of such circumstances and of well-established rules, it cannot now be made the basis for determination of the issues here. See, 1 Dunnell, Dig. & Supp. § 401, and numerous cases cited.

Affirmed.