# ROSE RUDD AND ANOTHER v. VILLAGE OF BOVEY.

89 N. W. (2d) 689.

April 11, 1958—Nos. 37,222, 37,223.

*Nahman Schochet* and *Lewis, Hammer, Heaney, Weyl & Halverson,* for appellant.

*Spellacy, Spellacy & Lano* and *John A. Spellacy,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Action by Rose Rudd against the village of Bovey for injuries sustained when she fell on a public sidewalk in the village on October 27, 1955, at 7 a. m. William Rudd, her husband, likewise brought action for special damages sustained as a result of her injuries.

The jury returned a verdict in favor of Rose Rudd for $7,200 and for William Rudd for $5,867. Subsequent to the trial, William Rudd

died and his wife, as special administratrix for his estate, was substituted as plaintiff in his action. These appeals are from an order in each case denying defendant's motion for judgment notwithstanding the verdict or for new trial.

On appeal defendant contends (1) that defendant was not negligent in failing to repair a hole or depression in the sidewalk upon which Mrs. Rudd fell; (2) that Mrs. Rudd was guilty of contributory negligence and assumed the risk of injury as a matter of law in attempting to step over rather than around the depression; (3) that the verdicts are excessive; and (4) the court erred in refusing to give certain instructions requested by defendant.

At the time of the accident plaintiff, on her way to work, was walking easterly on the public sidewalk on the south side of Second Street approaching Third Avenue in the business district of Bovey. The sidewalk upon which she was traveling rises uphill easterly and has numerous cracks, holes, depressions, rises, and other defects within the block in which the accident occurred. The day was bright and clear. There was no snow or ice on the walk and nothing to distract the attention of pedestrians. Mrs. Rudd's vision was good and during the year prior to her fall she had traversed this walk some 200 times. As she approached the depression, she observed it and attempted to step over it. While doing so, the heel of her shoe struck the edge thereof and she fell, fracturing her left kneecap.

Defendant submitted evidence that the depression upon which the fall occurred was triangular in shape with a depth of 1¼ inches on the north side and 1½ inches on the south side. Photographs thereof were received in evidence and considered by the jury. It had existed for at least 2 or 3 years prior to the accident and could have been easily repaired with tarvia at a reasonable cost.

Plaintiff testified that she had not paid any particular attention to the defect that caused her fall but had observed it along with other defects and depressions in the sidewalk in this block as she walked along. She admitted that she could have stepped to the right or left of this depression and avoided it but had decided to step over it instead and that in doing so she had slipped and the heel of her shoe had caught in the depression and tripped her.

■ It is well established that a corporate municipality must use ordinary care to keep its streets and sidewalks safe for persons using the same. 13 Dunnell, Dig. (3 ed.) § 6818. Of course, this does not impose upon it the obligation of furnishing protection against extraordinary or improbable occurrences. Tracey v. City of Minneapolis, 185 Minn. 380, 241 N. W. 390; Hanson v. City of Montevideo, 189 Minn. 268, 249 N. W. 46.

■ It is defendant's contention that the sidewalk defect here was not such as to require the village to guard against the possibility of pedestrians falling thereon. The decisions of this court appear to hold to the contrary. In Bieber v. City of St. Paul, 87 Minn. 35, 91 N. W. 20, it was held that, where a hexagonal piece of sidewalk at the entrance to a store in the busy section of town was 1¼ inches lower than the level of the surrounding walk, the question of defendant's negligence was for the jury. In arriving at this conclusion, one of the factors given consideration was the heavy foot traffic over the walk at the place where the defect existed. In Estabrook v. City of Duluth, 142 Minn. 318, 320, 172 N. W. 123, 124, where the area surrounding a knot in a wood paving block had worn down from a depth of ½ inch to 1½ inches, this court quoted with approval the applicable principles set forth in Leystrom v. City of Ada, 110 Minn. 340, 343, 125 N. W. 507, 508, as follows:

"* * * It is impossible for this court to prescribe exact limitations from which, in all cases, it may be determined what character of defect in a public street constitutes negligence on the part of the municipality. Given a defect and consequent injury, the question of negligence must generally be submitted to the good sense of the jury, * * *."

See, also, Genereau v. City of Duluth, 131 Minn. 92, 154 N. W. 664; Klaysmat v. Village of Hibbing, 172 Minn. 524, 215 N. W. 851; Brittain v. City of Minneapolis, 250 Minn. 376, 84 N. W. (2d) 646.

These decisions give support to our conclusion that here the issue of defendant's negligence was one for the jury. The evidence established that the defect was in the busy section of the village and was known to its officials for some time prior to the accident. It could have been readily and economically repaired. Without question, it created a hazard

for pedestrians using the sidewalk in which it was present. Under such circumstances we find no error in submitting to the jury the question of defendant's negligence nor in its determination thereof.

3. Likewise, it seems clear that the questions of Mrs. Rudd's negligence or assumption of risk were for the jury. It is only where facts are undisputed and reasonable men can draw but one conclusion therefrom that these issues become questions of law. Campion v. City of Rochester, 202 Minn. 136, 277 N. W. 422; Eichhorn v. Lundin, 172 Minn. 591, 216 N. W. 537.

Defendant, however, relies upon Wright v. City of St. Cloud, 54 Minn. 94, 55 N. W. 819, where it was held:

"If a person, with full and present knowledge of the defective condition of a sidewalk, and of the risks incident to its use, voluntarily attempts to travel upon it, when the defect could easily, and without appreciable inconvenience, have been avoided by going around it, he is not in the exercise of reasonable care, but must be presumed to have taken his chances, and if injury results he cannot recover from the city."

There, plaintiff lived on the opposite side of the street upon which she had been walking when the accident occurred. The sidewalk involved was covered with rutted ice, obvious to anyone using it. Because it was in front of a vacant lot, it had not been cleared for some time. On the opposite side of the street, the sidewalks had been cleared and were free of snow and ice and convenient and safe for passage. Under such circumstances, it was held that plaintiff was negligent in selecting the more dangerous route.

Here, it does not appear that Mrs. Rudd was deliberately choosing a dangerous route when a more safe one was available. The sidewalk upon which she fell had repeated breaks, rises, and depressions therein within the same block in which the accident occurred. The cement blocks forming it had settled or risen to various levels. Under defendant's contentions, if Mrs. Rudd were to absolve herself from the claim of negligence, she would have been obligated to sidestep, hop, skip, and jump her way down this block in every effort to avoid its numerous rises and depressions while enroute to her employment. We do not

think she was required to go to such lengths or to adopt such methods of travel to escape either the charge of negligence or the assumption of risk as a matter of law. Nor do we think that it can be said that the sidewalk on the main thoroughfare of the village was so obviously a dangerous thoroughfare that anyone using it at this point was undertaking a course of conduct so inherently dangerous that his contributory negligence or assumption of the risk of injury would follow as a matter of law. Ryan v. City of Crookston, 225 Minn. 129, 30 N. W. (2d) 351; Slindee v. City of St. Paul, 219 Minn. 428, 18 N. W. (2d) 128.

We have held that, where a tenant is familiar with the defective condition of leased premises, his use thereof did not constitute contributory negligence or assumption of risk as a matter of law unless the defective condition was obviously so dangerous that a reasonably prudent person would consider such use to be foolhardy. Swenson v. Slawik, 236 Minn. 403, 53 N. W. (2d) 107; Lincoln v. Cambridge-Radisson Co. 235 Minn. 20, 49 N. W. (2d) 1; Schrader v. Kriesel, 232 Minn. 238, 45 N. W. (2d) 395; Vosbeck v. Lerdall, 245 Minn. 164, 72 N. W. (2d) 371. Clearly, the determination of these issues was for the jury in the instant case.

■ Defendant contends that both verdicts are excessive. Mrs. Rudd was 55 years old at the time of the accident and then had a life expectancy of 17.4 years. She worked approximately 15 hours a week doing outside housework in addition to her own housework and received approximately $60 a month in payment therefor. Her injuries required 20 days' hospitalization and thereafter she wore a cast for six weeks and was totally disabled for 4½ months. Since then, she has done light housework in her own home but has not been able to work at other employment. Her physician testified she had suffered a 25-percent disability to her left leg and sustained a permanent limp therein; that she would be unable to carry on any outside work; and that she would suffer discomfort from arthritis developed as a result of her injury. He testified further that she had endured severe pain at the time of her injury, and for many months thereafter. Under such circumstances, we do not feel that the verdict of $7,200 returned by the jury was excessive.

■ The record establishes that Mr. Rudd incurred expenses of $1,636.15 for hospitalization and medical care for his wife as a result

of the accident. This would mean that he was allowed $4,230.85 for the loss of her services and consortium. Over objection evidence was submitted that, at the time of the trial, he had a hypertensive heart depression, cardiac asthma, and a decompensated heart—a backing up of his heart described as dropsy. It is contended that such evidence was improper and influenced the jury to return an excessive verdict in behalf of Mr. Rudd. He died within a few months after the trial. Under all such circumstances, it would seem that the verdict returned for him was somewhat excessive and may have been occasioned by sympathy created from evidence submitted with reference to his poor health. We have reached the conclusion that in his case a new trial should be granted unless written consent be filed reducing the verdict in his favor to the sum of $3,000.

■ Defendant contends that the trial court erred in refusing to instruct the jury that, if a defect is obvious and can be easily avoided, it is negligence not to avoid it; that, if Rose Rudd knew that the sidewalk was in a dangerous condition, it was her duty in passing over it to use more than ordinary care and caution to avoid injury; and that, if a reasonable alternative were known to her and she proceeded across the dangerous condition, she assumed the risk and cannot recover. Subsequently, defendant's counsel requested that the court instruct the jury that "If plaintiff voluntarily assumed the risks of a situation that was known to her and that * * * an ordinarily careful, prudent person would not have assumed under the same circumstances, then she is held to have assumed the risk and can't recover." The trial court instructed the jury as follows:

"* * * If you find that the Village of Bovey was negligent in the maintenance of the street at that particular place where Mrs. Rudd alleges she fell, then you go to the question of contributory negligence. There is a rule of law that one cannot recover if the accident was caused by their own negligence. Mrs. Rudd, on the day of the accident, just as any pedestrian, had to exercise reasonable care for her own safety as she walked along that sidewalk. If plaintiff voluntarily assumes the risk of a situation that was known to her and that an ordinarily careful and prudent person would not have assumed under the same circumstances,

then she would be guilty of contributory negligence and she couldn't recover, but the test still is 'What would an ordinarily prudent person have done under the same or similar circumstances?' "

We do not feel that there was material error in the court's refusal to give the instruction requested by defendant on this issue. It failed to include the requisite that the defective condition complained of must be obviously dangerous to the extent that a reasonably prudent person would consider the use thereof to be dangerous or foolhardy. Swenson v. Slawik, 236 Minn. 403, 53 N. W. (2d) 107. The instruction actually given, while not in as much detail as might be desired, did not set forth any principles which were erroneous and appears to have included within its scope the rules encompassed in the instruction to which defendant's counsel agreed subsequent to the submission of his written request.

Affirmed as to plaintiff Rose Rudd. New trial ordered as to Rose Rudd as special administratrix of estate of William Rudd, deceased, unless plaintiff file written consent, within 10 days, to reduction of verdict to $3,000.