RAYMOND B. DONALD v. FELIX MOSES AND ANOTHER,
AS EXECUTORS OF ESTATE OF MEYER MOSES, AND OTHERS.
CITY OF MINNEAPOLIS, APPELLANT.

94 N. W. (2d) 255.

January 16, 1959—No. 37,479.

*Charles A. Sawyer,* City Attorney, and *G. V. Johnson,* Assistant City Attorney, for appellant.

*Bonner, Bonner & Clements,* for respondent.

NELSON, JUSTICE.

Raymond B. Donald, plaintiff, commenced an action to recover for personal injuries consisting primarily of a fractured left arm alleged to have been sustained by him in a fall on a public sidewalk of the defendant city of Minneapolis. He named as other defendants in the action Felix Moses and Rebecca Moses, as executors of the estate of Meyer Moses, deceased (Meyer Moses at the time of death being an abutting property owner), and Emil Babe Saliterman, a lessee of the

Moses property. Plaintiff alleged that negligence on the part of each of the defendants had resulted in an accumulation of ice and snow on the public sidewalk adjacent to the Moses lot and the building erected thereon. The defendant city answered plaintiff's complaint, denying negligence on its part and as separate defenses affirmatively asserted plaintiff's assumption of risk and contributory negligence.

Plaintiff, at the time of trial, dismissed the actions as to all defendants except the city of Minneapolis. The case was tried before a jury, and a verdict was returned in favor of the defendant city. Plaintiff thereafter moved for a new trial. The trial court granted plaintiff's motion and in a memorandum attached to and made a part of its order stated that the new trial was granted solely on the ground of errors of law occurring at the trial and specified the errors. The defendant city appeals from the trial court's order pursuant to M. S. A. 605.09(4), seeking a reversal of the order and a reinstatement of the jury verdict.

Briefly, the facts may be stated as follows: The plaintiff is a dentist residing at 3833 Lyndale Avenue South in Minneapolis and maintains offices in downtown Minneapolis. In the forenoon on the date of the accident he proceeded from his home by bus to the intersection of Nicollet and 38th Street and alighted on the southwest corner of the intersection. His intention was to go to the meat market operated by Gerald W. Feiker at 3747 Nicollet Avenue South. He walked north across 38th Street and then proceeded east across Nicollet Avenue to the northeast corner of the intersection. The Feiker market was the fourth business location to the north on the northeast corner. Plaintiff states that as he approached the northeast corner of the intersection he observed the icy condition of the sidewalk and the snow but nevertheless stepped onto the sidewalk and proceeded across the icy portions. In crossing the icy portion, he slipped and fell. He has fixed the place where he fell as being about 4 feet from the curb line and 8 feet from the building line and 4 feet from the corner mailbox which he had to pass in going north on the east side of Nicollet Avenue. Plaintiff said that after stepping onto the sidewalk at the northeast corner of the intersection he took 3 or 4 steps east and then turned northerly. After passing the mailbox by 2 or 3 feet, his feet suddenly went out from under him and left him lying flat on his stomach, facing northerly.

Plaintiff and his witness Gerald W. Feiker testified that on the date of the accident the sidewalk where plaintiff fell was icy and slippery; that the condition was due to lack of snow removal in front of certain buildings, the ice in those spots being from 2 to 3 inches thick, with ruts and hummocks on the surface. There was testimony that there had been no snow removal in front of the building where plaintiff fell, for at least 30—possibly 60—days. The record indicates that where buildings had occupants along the streets in that immediate vicinity, such occupants shoveled in front of their own stores or other business places and cleared the walk to the curb so that customers approaching would have a clear, open path upon which to walk. However, plaintiff fell in front of an unoccupied building and the rough and icy condition there extended from the building to the curb line. The sidewalk directly in front of the dress shop, the bakery, and the meat market had been shoveled. Two photographs were received in evidence to portray the condition of the sidewalk as it existed at the time plaintiff fell.

Evidence was introduced showing weather condition, at the time, and for a full month immediately preceding the accident, but this has not been printed in the record. The record fails to disclose any evidence of safer alternative routes which the plaintiff might have taken in going to the Feiker market. The city was permitted to introduce testimony to establish the number of miles of sidewalk under its control. This established that there were at the time 9,919,905.6 lineal feet of sidewalk, which would measure on the average 6 feet in width and produce 59,519,433.6 square feet of sidewalk.

The plaintiff sought to introduce Minneapolis City Charter and Ordinances (Perm. ed.) c. 4, § 5(21), in order to rebut the inferences created by the city's testimony emphasizing the enormity of the task of clearing the city streets and sidewalks of snow and ice. The plaintiff's offer was overruled. The charter provision provides the method whereby the city may compel the owner or occupant to remove snow, ice, and other rubbish from the sidewalks, streets, or alleys, and reads as follows:

"Twenty-first.—To compel the owner or occupant of buildings or grounds to remove snow, ice, dirt or rubbish from the sidewalk, street

or alley opposite thereto, and compel such occupant or owner to remove from the lot owned or occupied by him, all such substances as the Board of Public Welfare shall direct; and in his default to authorize the removal or destruction thereof by some officer of the city, at the expense of such owner or occupant. Also to compel the owners of low grounds where water is liable to collect and become stagnant to fill or drain such low places, and in their default to authorize such filling or draining at the expense of such owner or owners.

"Provided, That said Council may require snow and ice to be removed, as aforesaid, throughout such districts in said city as it shall direct, and may make the expense of any removal or destruction of any such substances which said Board of Public Welfare may direct to be removed, and the expense of filling or draining any such low place, a lien upon the property from which said substances are removed or on which destroyed, or on which said low grounds are filled or drained, and may make a special assessment for the same to be collected as other special assessments are collected."

At the time of the trial court's ruling on the introduction of the aforesaid charter provision, the court had granted a motion to reopen in order that the plaintiff might have an opportunity to make the offer. The offer, however, was denied and the following colloquy between plaintiff's counsel and the court occurred:

"Mr. Clements: Am I to understand the Court that I cannot argue that the City has the right to ask such an ordinance compelling the occupants to clean their sidewalk?

"The Court: That is right, you can't argue that.

"Mr. Clements: And then I understand the Court that I cannot argue this ordinance in any respect?

"The Court: That is right.

"Mr. Clements: Exception, please."

The court in its instructions to the jury said:

"The Court has heretofore advised you of the issues in this case. The plaintiff * * * claims that the defendant was negligent. The defendant denies any negligence on its part.

"In addition, the defendant has asserted the affirmative defense of contributory negligence and the affirmative defense of assumption of risk.

"The affirmative defense of contributory negligence is not in this case, and you are to disregard that particular issue.

"The other affirmative defense, assumption of risk, is that the defendant contends that even if it were negligent, which it denies, that the plaintiff cannot recover because he himeslf assumed whatever risk of injuries he sustained.

"Now, the general rule is that one who asserts the affirmative of an issue has the burden of proof with respect to that issue.

"In this case it means that the plaintiff has the burden of proving that the defendant was negligent. On the other hand, the defendant has the burden of proving that the plaintiff assumed the risk.

\*    \*    \*    \*    \*

"Where the plaintiff in a case puts himself in a position to encounter known hazards which the ordinarily prudent person would not do then it is said the plaintiff assumes the risk of injury therefrom. In other words, if one voluntarily puts himself in a position of danger and he knows and appreciates, or in the exercise of ordinary care he should have known and appreciated the dangers and the possibility that harm may come to him while in such position, then he is deemed to have assumed the risks of the consequences which might reasonably have been anticipated.

"On the other hand, one does not assume dangers which were unknown to him or which in the exercise of ordinary care he could not have known and of which he has not been warned.

"Assumption of risk is a good defense against a claim of negligence. If the plaintiff has assumed the risk of injury then he cannot recover from the defendant."

The plaintiff's motion for a new trial was upon several grounds. We need only consider the following:

"4.   Errors of law occurring at the trial and duly excepted to by plaintiff.

"5.   The following errors of law which occurred at the trial:

"(1)   The Court erred in instructing the jury that in their deliberation they could take into consideration the question of whether or not plaintiff assumed the risk of his injuries.

"(2)   The Court erred in refusing to permit plaintiff to put in evidence Chapter 4, Section 5, Subdivision 21 of the Charter of the City of Minneapolis.

"(3)   The Court erred in permitting defendant to introduce in evidence the number of miles of sidewalk in the City of Minneapolis without at the same time requiring defendant to show in connection therewith whether or not defendant had during the winter of 1955-56, cleared or caused to be cleared ice or snow from any portion."

In its memorandum the trial court states that it erred in submitting to the jury the question of the affirmative defense of assumption of risk and that it further erred in excluding as evidence charter provision § 5(21).

It is clear that the trial court after most carefully considering the issues has reached the conclusion that it erred in submitting the affirmative defense of assumption of risk, rather than that of contributory negligence, due to having overlooked certain prerequisites for the application of the defense of assumption of risk which are that the assumption must be free and voluntary; that the risk is not assumed where the conduct of the defendant has left the plaintiff no reasonable alternative; and that, if a plaintiff with full knowledge of the dangerous condition of a sidewalk, because of icy conditions, voluntarily attempts to walk on it, he is not deemed to assume the risk of injury unless the defendant proves the reasonable availability of a safer route of travel. The trial court cites Campion v. City of Rochester, 202 Minn. 136, 277 N. W. 422.

The court in its memorandum goes on to say:

"Assumption of risk must be distinguished from contributory negligence. One may assume the risk even though he is not negligent in deciding to proceed forward and even though he exercises reasonable care in the manner in which he proceeds. On the other hand, one may not assume risk, as where for example, there is no reasonable alternative but nevertheless still be considered to be contributorily negligent, as where a reasonable man under the circumstances would not proceed

forward.

"In the case at bar no evidence was introduced to show alternative routes to the meat market which were safer than the route selected by plaintiff. The burden of proving such a route was upon the defendant.

"The Court erred in submitting the question of assumption of risk to the jury. It also erred in not instructing the jury on contributory negligence."

We agree with the trial court's statement of the law in its memorandum.[1]

■ Defendant city asserts that the trial court's error in this regard is not properly before this court since plaintiff failed to comply with Rule 51 of Rules of Civil Procedure, which requires a party, *before the jury retires,* to object to *unintentional misstatements and verbal errors, or omissions* in the charge. In this respect Rule 51 is declaratory of the prior Minnesota law. 2 Youngquist & Blacik, Minnesota Rules Practice, pp. 554, 555. Rule 51 provides in part as follows:

"* * * No party may assign as error unintentional misstatements and verbal errors, or omissions in the charge, unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objections. An error in the instructions with respect to fundamental law or controlling principle may be assigned in a motion for a new trial though it was not

---

[1]Prosser, Torts (2 ed.) § 55, p. 311, states:

"Assumption of risk must be free and voluntary. If it clearly appears from the plaintiff's words or conduct that he does not consent to relieve the defendant of the obligation to protect him, the risk will not be assumed. * * *

"The risk is not assumed where the conduct of the defendant has left the plaintiff no reasonable alternative. * * * a tenant does not assume the risk of the landlord's negligence in maintaining a passageway when it is the only exit to the street; and one who uses a defective highway does not assume the risk when there is no reasonable alternative route. * * * By placing him in the dilemma, the defendant has deprived him of his freedom of choice, and so cannot be heard to say that he has voluntarily assumed the risk. * * * where there is a reasonably safe alternative open, the plaintiff's choice of the dangerous way is a free one, and may amount to both contributory negligence and assumption of risk."

otherwise called to the attention of the court."

It is clear that the rule which the defendant city contends for applies to inadvertent, technical, or nonfundamental defects, ambiguities or omissions which do not destroy the substantial correctness of the charge as a whole. Here, however, the defect in the charge was the court's application of the affirmative defense of assumption of risk when it is now admitted by the trial court that it should under all the circumstances have applied, as the test of the acts of plaintiff, the affirmative defense of contributory negligence. That error was not only fundamental but prejudicial to the plaintiff's rights, and, since this fundamental error was assigned in plaintiff's motion for a new trial, the issue is properly before this court.

It is apparent that the court was mistaken as to which affirmative defense should be applied to the evidence. This resulted in the giving of a misleading instruction. It is true that counsel for the plaintiff did not raise the issue before the case was submitted to the jury, but in compliance with Rule 51, he did raise the issue in the motion for a new trial, and that is all that is necessary under Rule 51 where the error in the instructions occurs with respect to fundamental law or controlling principle. Certainly the affirmative defenses of assumption of risk and contributory negligence, pleaded on the part of the defense, were intended as statements of fundamental law and controlling principle and, moreover, as important issues for the jury to determine. See, Francis v. Wilson, 249 Minn. 508, 83 N. W. (2d) 248; Zurko v. Gilquist, 241 Minn. 1, 62 N. W. (2d) 351; Adelmann v. Elk River Lbr. Co. 242 Minn. 388, 65 N. W. (2d) 661; Storey v. Weinberg, 226 Minn. 48, 31 N. W. (2d) 912; Greene v. Mathiowetz, 212 Minn. 171, 3 N. W. (2d) 97; Donovan v. Ogston, 239 Minn. 553, 59 N. W. (2d) 672; Hess v. Koskovitch, 241 Minn. 174, 62 N. W. (2d) 806; Trudeau v. Sina Contracting Co. Inc. 241 Minn. 79, 62 N. W. (2d) 492; Peterson v. Lang, 239 Minn. 319, 58 N. W. (2d) 609; MacIllravie v. St. Barnabas Hospital, 231 Minn. 384, 43 N. W. (2d) 221; Dehen v. Berning, 198 Minn. 522, 270 N. W. 602; Farnum v. Peterson-Biddick Co. 182 Minn. 338, 234 N. W. 646; Anderson v. Wormser, 129 Minn. 8, 151 N. W. 423; Steinbauer v. Stone, 85 Minn. 274, 88 N. W.

754; 19 Dunnell, Dig. (3 ed.) § 9798, and cases cited; Wright, Minnesota Rules, pp. 290 to 292.[2]

As to plaintiff's offer in evidence of charter provision § 5(21), the trial court stated that the parties agreed that a city has a duty to keep its sidewalks in a reasonably safe condition for the traveling public and that this duty remains with the city at all times and cannot be shifted to private property owners. The duty of the city to keep its walks in a safe condition for travel is not limited to structural defects but extends as well to dangerous accumulations of ice and snow. Wright v. City of St. Cloud, 54 Minn. 94, 55 N. W. 819.[3]

The trial court in its memorandum further explains its position as follows:

"On the question of the performance of that duty and on the question of whether the City exercised reasonable care in view of its duty, as distinguished from the question of the existence of the duty, the City introduced evidence as to the number of miles of sidewalk within the City. The obvious purpose of this was to show that the City had a tremendous task in keeping the sidewalks clear in view of the number of miles of sidewalk and that it exercised reasonable care in the light thereof. The numbers of miles of sidewalk gives only part of the picture. While such evidence is competent and relevant, it has meaning and significance only when the amount of personnel and equipment available to the City is made known. This might depend on the amount of money available to the City Engineering Department and possibly on the taxing power of the City itself. In any event such evidence would be competent and relevant. The same would be true if evidence concerning means of clearing sidewalks other than through the City's

---

[2]The same rule applies to failure to submit an important or controlling issue to the jury. See, Robertson v. Burton, 88 Minn. 151, 92 N. W. 538; Sassen v. Haegle, 125 Minn. 441, 147 N. W. 445, 52 L.R.A. (N.S.) 1176; Federal Oil Co. v. Peoples Oil Co. 179 Minn. 467, 229 N. W. 575; 19 Dunnell, Dig. (3 ed.) § 9798.

[3]See Olson v. City of St. Paul, 141 Minn. 434, 170 N. W. 586, wherein evidence as to the number of miles of sidewalk in the city was held admissible as bearing on the question of defendant's negligence as relating to the time within which the city should remove the snow.

own personnel and equipment was sought to be introduced. The plaintiff, by way of rebuttal, did not attempt to introduce any of such evidence to counteract the effect of the sidewalk mileage evidence. Instead it offered in evidence * * * [§ 5(21)]. That provision in effect empowers the City, by way of ordinance, to ask property owners to remove ice and snow from their sidewalks. It does not change the duty of the City, nor relieve the City of its duty. It does not even assure the City that the request will be complied with. The availability of this power to ask goes not to the question of the existence of the City's duty but rather to whether it exercised due care in the performance thereof. The power to ask property owners to clear the sidewalks is a means which the City has available to it to perform its duty. How effective this means is, how practical the exercise of this power to ask would be —are other questions. Certainly the availability of the power would be competent and relevant evidence in rebuttal to the mileage evidence. The Court excluded the offered evidence. In this it committed error."

It is our view that the trial court committed error in refusing to admit into evidence the portion of the city charter offered by way of rebuttal. We are in agreement with the court's position as set forth in its memorandum, since it is clear in this state that the duty to keep sidewalks and streets in a safe condition is a responsibility which the municipality retains at all times as a primary duty. When delegated to owners and occupants, it is in their capacity as municipal agents only. See, Sternitzke v. Donahue's Jewelers, 249 Minn. 514, 83 N. W. (2d) 96; Moore v. City of Minneapolis, 19 Minn. 258 (300); Shartle v. City of Minneapolis, 17 Minn. 284 (308); Russell v. Sincoe Realty Co. 293 Mo. 428, 240 S. W. 147; Colby v. City of Portland, 85 Ore. 359, 166 P. 537.

It is to be noted that the record discloses no evidence showing alternative routes which were safer than the route selected by plaintiff. The burden of proving such a route was upon defendant city. Strong v. Shefveland, 249 Minn. 59, 81 N. W. (2d) 247; Slindee v. City of St. Paul, 219 Minn. 428, 18 N. W. (2d) 128.

Ordinarily, whether errors in the charge were prejudicial and likely to mislead, or did mislead, or influence, the jury are questions which

the trial court is in a better position to determine than this court. Where there is error in the charge coupled with a ruling on the evidence, and the trial court deemed such errors prejudicial and grounds for granting a new trial, it should require a clear showing of error or abuse of discretion to warrant a reversal by this court. The plaintiff was entitled to have his case tried on the right theory regarding admissible evidence and controlling principles of law. Mingo v. Extrand, 180 Minn. 395, 230 N. W. 895; Moll v. Bester, 177 Minn. 420, 225 N. W. 393; 14 Dunnell, Dig. (3 ed.) § 7166.

We think the errors here went to the very fact issues submitted to the jury for its determination and that they were of such prejudicial nature as to warrant the granting of a new trial on all issues. The order of the trial court is affirmed.

Affirmed.