## ADA HANSEN v. CITY OF MINNEAPOLIS AND OTHERS. LUMBER EXCHANGE CORPORATION, APPELLANT.

113 N. W. (2d) 508.

February 2, 1962—No. 38,139.

*Mahoney & Mahoney,* for appellant.
*Bruce B. James,* for respondent.

MAGNEY, COMMISSIONER.

On February 8, 1955, plaintiff, Ada Hansen, was walking westerly on the sidewalk on the north side of Fifth Street South in the city of

Minneapolis. As she was about to pass the office building of defendant Lumber Exchange Corporation she fell and was injured. She claims that defendant was negligent in permitting an artificial accumulation of ice to form on the sidewalk adjacent to its building. Defendant denies that it was negligent and claims that the accident was caused by plaintiff's contributory negligence and that plaintiff assumed the risk and hazard of injury. Verdict was for plaintiff. Defendant appeals from the order of the court denying its motion for judgment notwithstanding the verdict.

An alleyway, part of which had been dedicated as a public sidewalk, ran between defendant's building and the one to the east of it. The property line was in the center of the alley. A portion of defendant's building extended onto the sidewalk. A roof area of about 120 square feet above this extension drained to a downspout at one corner of it. This downspout had rusted and rotted where it was connected with the gutter on the roof, leaving open spaces between the downspout and the gutter. It was rusted and riddled with holes. Fifty percent of the roof water would escape to the ground below. Snow on the roof would melt, partly because of heat from the building itself, causing water to run off. In freezing weather, the water would create a lump of ice under the downspout on defendant's side of the alley near the building and thus on the sidewalk.

At about 10 minutes before 1 o'clock, that is, during the noon hour, plaintiff, age 39, was walking westerly on the sidewalk in question. There were people walking ahead of her but not so close that she could touch them. Several were walking on the sidewalk to her left. As she approached the alleyway, she noticed that the surface of the alleyway was different from the rest of the sidewalk. There were bumps and ridges extending out into the alley. Pedestrians walking in front of her crossed over this area and had no difficulty in doing so. Neither did she until she fell and was injured. While still sitting on the sidewalk she noticed the downspout, with water dripping from its end and other places. The surface of the walk was wet. She also noticed for the first time a bump of ice about 4 inches high, caused by this dripping water. She had fallen on this bump of ice. Prior to her fall she had not noticed it. As she started across the alley she noticed that it was not smooth but

had ridges and bumps. It was smooth near the curb; other people were walking there. She said that she could not move over and push them aside. As she was walking along she did not look down at her feet but was concerned with what was ahead of her. She said that she had walked over that sort of surface before and had experienced no trouble. She said that she realized that anyone walking in an icy area was in danger of falling but at that time she did not think of falling. She did not testify that she realized the danger of crossing over this particular patch of ice, and, as stated, she did not see the bump on which she fell.

The negligence of defendant is clear. By maintaining a defective downspout, it permitted the creation of a dangerous artificial accumulation of ice on a heavily traveled sidewalk. Defendant does not question its liability as found by the jury. Neither does it question the court's ruling on evidence or its charge to the jury. Its complaint is that the court should have granted judgment notwithstanding the verdict on the ground that plaintiff assumed the risk and was guilty of contributory negligence as a matter of law.

Defendant relies chiefly on the recent case of Geis v. Hodgman, 255 Minn. 1, 95 N. W. (2d) 311. In that case plaintiff walked down her employer's driveway to the mailbox and, when returning from the mailbox, slipped on a patch of smooth ice, fell, and was injured. She knew that the patch of ice was there—had seen it when she went down to the mailbox—and that the driveway had been in the same condition for several days. Her explanation was that she did not know how slippery the ice was—that it was more slippery than she expected. This court was of the opinion that the evidence was so conclusive that plaintiff had assumed the risk that it left nothing for the jury to pass upon and therefore ordered judgment for defendant.

In the Geis case the relationship of master and servant existed, and, as the court said, in such cases the doctrine rests on contract. Here we do not have this relationship and therefore do not have a contract basis. However, in this state the separate defense of assumption of risk exists in non-master-servant cases, although it may become a phase of contributory negligence, as stated in Schrader v. Kriesel, 232

Minn. 238, 45 N. W. (2d) 395. In the Geis case the court said (255 Minn. 12, 95 N. W. [2d] 318):

"* * * It adds only to confusion to attempt to reconcile them [non-master-servant cases] with cases such as we now have before us."

Assumption of risk involves the comprehension that a peril is to be encountered and a willingness to encounter it. Notice or knowledge and an appreciation of the danger are indispensable to an assumption of risk. Schrader v. Kriesel, *supra*. A person, to be charged with assumption of risk, must know, understand, and appreciate the risk of being injured. However, in any case involving assumption of the risk, the rule is that the question whether a party has assumed the risk of a given situation usually is for the jury, unless the evidence is conclusive. In such case, it becomes a question of law. Geis v. Hodgman, *supra*. The question then in this case is whether the evidence on the question of the assumption of the risk is so conclusive that there is nothing for the jury to pass upon.

Here, plaintiff, on a busy noon hour, was walking on a sidewalk. She was not familiar with the icy condition. She had not seen it before. Pedestrians were ahead of her and alongside. She saw the area of rough ice in front of her. People walking ahead of her crossed the rough spot without difficulty. She did not see the bump of ice described previously until after she had fallen. In the Geis case, plaintiff was well acquainted with the slippery patch of ice, and her only excuse was that it was more slippery than she expected it to be. She had seen and knew the whole situation. Our present case is not one of smooth ice, where one glance would reveal everything. It is a case where plaintiff knew nothing of the 4-inch-high bump which caused her to fall. She did not see this bump. It was not a danger that she was aware of. Other people walking ahead of her were using the sidewalk the same as she was. Under such facts, one cannot say that the evidence is so conclusive that plaintiff assumed the risk as a matter of law. Neither do we think that the evidence established contributory negligence as a matter of law.

Order affirmed.

OTIS, JUSTICE (dissenting).

I dissent. In my opinion plaintiff assumed the risk of the injury she received as a matter of law.

Her knowledge and understanding of both the dangerous condition which confronted her and the alternative route which was conveniently available to her are clearly established by plaintiff's own testimony.

On direct examination Mrs. Hansen testified as follows:

"Q. Now, can you tell us generally how high it was as to, say, the highest point of this bump that you refer to?

"A. Oh, about four inches.

\* \* \* \* \*

"Q. Now, as you approached that alleyway, did you observe the condition of the surface of that alleyway?

"A. Well, I noticed it was different. There was bumps and ridges."

On cross-examination plaintiff gave the following testimony:

"Q. And you were able to see what was up there, at least what was up there on the alley, particularly in the area where you eventually fell?

"A. No, I didn't notice it.

"Q. You didn't notice anything there?

"A. I noticed it when I got up to the alley. I noticed it looked differently than the rest of it.

\* \* \* \* \*

"Q. Did you ever describe the area as being about three feet in diameter?

"A. Where I fell?

"Q. No. The area of the bumpy ice.

"A. Well, it was a big size.

"Q. And the balance of the sidewalk alley was smooth, was it not?

"A. Yes.

"Q. And that was the area over which other people were walking?

"A. Yes, people were coming and going both ways.

"Q. As you started across the alley you were able to observe that this bumpy area was ahead of you?

"A. I noticed it, but I tried to be careful.

"Q. And you realized that it was bumpy ice?

"A. Yes.

"Q. And that you were in danger of falling or tripping?

"A. I seen others made it, so I thought I would, too.

\* \* \* \* \*

"Q. And you appreciate that this particular bumpy area was something that was a hazard to walk across?

"A. Well, the whole alley was, as far as that was concerned.

"Q. But wasn't the rest of the alley smooth?

"A. Yes, in front it was, yes.

"Q. That means the part near the street?

"A. Near the curb, yes. I wasn't on that side.

"Q. So, as I take it, then, as you walked up near the edge of the alley you could see that this bumpy area was immediately ahead of you?

"A. Yes, as I came from the alley.

"Q. Nothing to prevent you from seeing it?

"A. Well, it's different from the rest of it.

"Q. And if you walked over a little bit to the left where the street was, there was no bumpy area?

"A. No, but there was people there.

"Q. There was no bumpy area?

"A. No.

"Q. And that was where the people were crossing?

"A. Yes.

\* \* \* \* \*

"Q. Exactly where it was, but it was somewhere back before you started across the alley that you observed this bumpy condition about three feet in diameter?

"A. No, I didn't notice that bump that I fell on.

"Q. Did you in July of 1958 say that you did observe it?

"A.   I noticed the alley was different, had bumps in it, but I didn't notice that one bump until I fell.

*  *  *  *  *

"Q.   Now, as you approached and saw this bumpy area ahead of you, did you turn to the right or left to avoid it?

"A.   No, I just kept right on walking straight. There was people right on the far side of me so I couldn't move over.

"Q.   You could have waited, could you not?

"A.   Well, I seen others go over it, so I thought I could make it, too.

*  *  *  *  *

"Q.   The question I have then is, you could have waited?

"A.   I suppose I could have.

"Q.   Now, this bump was about four or five inches high?

"A.   Yes.

"Q.   And you could see it prior to the time you entered the alley?

"A.   No, I didn't see how high it was until I fell on it.

"Q.   There was nothing to prevent you from turning to the right or left to go around it?

"A.   Yes, there was. There was people next to me there. I couldn't push them over.

*  *  *  *  *

"Q.   You also realize that to the left of the area where you were walking was a safer route than the one you were taking?

"A.   Well, there was so many people going down I couldn't see under their feet too good, but as far as I could recollect, it was better.

"Q.   You did realize that was safer?

"A.   Yes."

It is apparent that as she approached the alley Mrs. Hansen observed an area approximately 3 feet in diameter containing bumps and ridges. She testified that before crossing the dangerous section she observed a smooth area of sidewalk near the curb. However, she elected not to cross the alley by the safer route because other people were at that particular moment occupying the space.

In the leading Minnesota case on the subject, Wright v. City of St. Cloud, 54 Minn. 94, 55 N. W. 819, Mr. Justice Mitchell cogently

established the rule governing assumption of risk in the use of icy sidewalks. We have consistently followed that decision and have recently cited it in Rudd v. Village of Bovey, 252 Minn. 151, 89 N. W. (2d) 689. In the Wright case the plaintiff was confronted with a sidewalk made hazardous by icy ridges, humps, and hollows, but elected to traverse the dangerous area because, as she testified, she had no idea it was as bad as it was. This court found that plaintiff, by retracing her steps 100 feet and crossing the street, could have avoided the accident, and held that she had assumed the risk as a matter of law. In his opinion Mr. Justice Mitchell stated (54 Minn. 98, 55 N. W. 820):

"But in the present case, *while plaintiff might not have known of the existence or location of any particular hollow or hole in this path, it is very clear from her own testimony that she had full and present knowledge of the precise condition of this part of the sidewalk, and of the risk incident to traveling over it.* The only risk was that of slipping and falling, and that was perfectly patent to any one of ordinary intelligence. She simply overestimated her own ability to travel across it without falling. There was no necessity of her going over the defect, but she could have easily, and without appreciable inconvenience, avoided it, by going across to the other side of the street, where the walk was perfectly safe. Under such circumstances she was not in the exercise of reasonable care, but must be presumed to have taken her chances, and having done so, and an injury having resulted, she cannot recover from the city. No different rule as to contributory negligence, or assumption of risks, whichever it is called, is to be applied from that which would be applied to any other case; and, if the plaintiff had exercised half as much care for her own safety as she exacts from the city for the safety of travelers, the accident would never have occurred." (Italics supplied.)

I believe the Wright case is on all fours with the instant case. Mrs. Hansen by her own testimony observed the bumps and ridges before crossing the alley, was aware of an alternative route available to her "without appreciable inconvenience" by moving toward the curb a few feet, but she chose to take a chance and was injured because she over-

estimated her ability to negotiate a dangerous area. In a recent case, Donald v. Moses, 254 Minn. 186, 192, 94 N. W. (2d) 255, 260, we stated the prerequisites for the application of this defense thus:

"\* \* \* that the assumption must be free and voluntary; that the risk is not assumed where the conduct of the defendant has left the plaintiff no reasonable alternative; and that, if a plaintiff with full knowledge of the dangerous condition of a sidewalk, because of icy conditions, voluntarily attempts to walk on it, he is not deemed to assume the risk of injury unless the defendant proves the reasonable availability of a safer route of travel."

In the instant case the only possible issue is whether the plaintiff had *full* knowledge of the dangerous condition. In my opinion, Mr. Justice Mitchell disposed of this question when he stated that it is enough that plaintiff have knowledge of the precise condition of the part of the sidewalk where the accident occurred without the necessity of her knowing of the existence and location of any particular hollow or hole.

Although Mrs. Hansen testified that she didn't notice the particular bump which caused her fall, she was fully aware of the rough and bumpy condition of the entire area she was about to cross. She "tried to be careful" and "thought" she "could make it." Following the reasoning of Mr. Justice Mitchell I do not believe we should adopt a rule that plaintiff is barred only if she apprehended the precise irregularity which caused her fall and consciously took its measure before embarking upon her hazardous undertaking.

I would reverse.

MR. JUSTICE ROGOSHESKE, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.