## HARRY LENZ AND ANOTHER v. CITY OF MINNEAPOLIS AND OTHERS.

167 N. W. (2d) 22.

April 3, 1969—No. 41307.

*Rischmiller & Wasche* and *John E. Wasche,* for appellants.

*William E. Mason,* for respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

NELSON, JUSTICE.

In this action to recover damages resulting from a fall on a public

sidewalk, plaintiff Elizabeth Lenz received a verdict of $3,500 and plaintiff Harry Lenz, her husband, received one of $360. Defendant city of Minneapolis was granted a summary judgment prior to trial. The other defendants appeal from an order denying their motion for judgment notwithstanding the verdict or a new trial.

If all conflicts in the evidence are resolved in favor of the prevailing parties below, the facts appear to be as follows: Mrs. Lenz suffered a fall on a public sidewalk in Minneapolis on March 15, 1965. She was at that time a healthy, middle-aged woman en route to her work and was walking in a generally southerly direction alongside a building belonging to defendants which abuts the west side of Emerson Avenue North. The sidewalk in question extends in length about one-half block. There is no boulevard between the sidewalk and Emerson Avenue. The city of Minneapolis in plowing Emerson Avenue regularly plowed the snow up and onto the sidewalk. The portion of the public sidewalk adjacent to defendants' vacant building was never shoveled or cleared at any time herein material. Snowfall during the first 2 1/2 months of 1965 had been heavy, and people using this sidewalk had walked a path down the middle of the 10-to-12-foot-wide sidewalk. This pedestrian traffic, together with intermittent thawing, freezing, snowing, drifting, melting, and plowing of the snow from the street onto the sidewalk had resulted in an uneven, icy, and rutted condition on the path for the entire length of the sidewalk adjacent to defendants' building. This path had become progressively worse from January 1 until the time of plaintiff's fall on March 15, 1965.

The path was approximately 2 to 5 feet from the doorstep of a drugstore in defendants' building, was 1 to 2 feet wide, and was about 4 to 5 feet from the side of the building. Mrs. Lenz, wearing vinyl-topped, rubber-soled "storm boots," was walking in this path, as she had done all winter, en route to work. Her progress was satisfactory until she fell by the drugstore doorstep. Over the drugstore door there was a canopy or overhang protruding over the sidewalk. This canopy was about 2 to 3 feet wide and about 5 or 6 feet in length. Snow and ice, or a combination thereof, had existed all winter on the sidewalk and path. Many times between January and March of 1965 snow on the canopy melted

and the water dripped on the doorstep or on the sidewalk, or on both. The dripping which came from the canopy worsened the condition of the sidewalk and path by the doorstep.

On the date plaintiff fell, the snow on the sidewalk varied from 20 to 40 inches; and the snow and ice, or a combination thereof, was 6 to 8 inches deep at the point where she fell. While plaintiff did not know whether she slipped on a flat surface or on a ridge, she testified that the surface where she fell was "ice and snow."

There was testimony to the effect that the area by the doorstep was "more slippery and rigid" than the rest of the path and the sidewalk, although the entire length of the sidewalk adjacent to defendants' vacant building was never shoveled or cleared of any substance at any time material herein. Defendants produced no evidence to show they had taken any action to prevent melting snow and ice from dripping from the canopy onto the public way and freezing thereon.

■ The essential question on this appeal is whether the evidence is sufficient to support the verdicts. We think it quite clear that as a general rule an owner or occupant of abutting property owes no duty to pedestrians to keep sidewalks safe from the hazards of ice and snow which have naturally accumulated thereon in the absence of a statute imposing such duty. We have held this to be true even though dangerous ridges are formed as a result of normal vehicular or pedestrian traffic. However, where the accumulation of ice and snow is due to artificial causes, the landowner may become liable for injuries resulting therefrom. Thus, if defendants here increased the hazard that normally existed during the winter months by permitting snow and ice which had accumulated on the canopy or overhang attached to their building to melt and trickle onto the sidewalk, this introduced a new element of danger which, if established by competent evidence, might well create liability. It has been laid down as a general rule that one who so constructs or maintains a structure upon his premises as to cause an artificial discharge or accumulation of water upon a public way, which, by its freezing, makes the use of the way dangerous, will be held liable to one who, being rightfully upon the way and exercising due care, is injured in consequence of such dangerous condition. 39 Am. Jur. (2d) Highways, Streets, and Bridges,

§ 520; Rudd v. Lyceum Dramatic Productions, Inc. 250 Minn. 328, 85 N. W. (2d) 61.

Courts from other jurisdictions have applied this general rule. In Calway v. Schaal & Son, Inc. 113 Conn. 586, 155 A. 813, the court held that the liability of the owner of leased premises for plaintiff's injuries was a jury question where plaintiff slipped on ice on the sidewalk in front of defendant's building, the ice having been formed by freezing water caused by drippings from the melting of snow accumulated on a coping and cornice. The court there said (113 Conn. 588, 155 A. 814):

"* * * It cannot be denied that there was evidence that the plaintiff fell by reason of slipping upon ice formed upon the sidewalk from water which was caused by the melting of snow upon, and which dripped from, the projections upon the front of the building; and that the snow had fallen the day before, and melted and dripped during the next day. There was also evidence from which the jury might reasonably conclude that water usually did drip from the projections in storms and would drip from melting snow accumulated upon them."

See, also, Marston v. Phipps, 209 Mass. 552, 95 N. E. 954; Stefani v. Freshman, 232 Mass. 354, 122 N. E. 293; and Van Slyke v. Fivey, 266 App. Div. 889, 42 N. Y. S. (2d) 625.

This court has also upheld a verdict for a pedestrian against an owner of abutting property for injuries resulting from a fall caused by an artificial accumulation of ice on a public sidewalk in Isham v. Broderick, 89 Minn. 397, 95 N. W. 224; Bannister v. George H. Hurd Realty Co. 131 Minn. 448, 155 N. W. 627; Johnson v. Elmborg, 165 Minn. 67, 205 N. W. 628; Hansen v. City of Minneapolis, 261 Minn. 568, 113 N. W. (2d) 508.

■ While the facts vary in these cases with respect to how the accumulation of ice was created, they support the verdicts in favor of plaintiffs in the instant case. Defendants take the position that the evidence tended to show that the condition of the sidewalk under the overhang near the doorstep was no worse than the rest of the sidewalk, and that there was no testimony on the part of Mrs. Lenz that she fell because of ridges caused by defendants.

While in many of the cases cited herein the plaintiff's fall was caused by a ridge of ice, the evidence here does not necessarily establish that plaintiff's fall was so caused. However, these cases are not precedents for holding that plaintiff must prove that a ridge caused her fall as a prerequisite to recovery. Liability may be imposed on defendants if a glare of ice brought about by artificial means directly under their control caused plaintiff to slip and fall.

■ It is plain that when the evidence in this case is considered as a whole there is sufficient evidence, both direct and circumstantial, to sustain the verdicts. Defendants submitted no proof that a reasonably safe alternative way was open to plaintiff in going to her work. The burden of proving the existence of such a route would be theirs. See, Donald v. Moses, 254 Minn. 186, 94 N. W. (2d) 255.

■ It is clear that the jury could find from the evidence that Mrs. Lenz slipped and fell by reason of a dangerous condition which had been made more hazardous to pedestrians walking on the sidewalk by the artificial discharge of water from defendants' abutting building. We think under the circumstances that the evidence establishes that defendants' negligence was a proximate cause of the injuries suffered by Mrs. Lenz. The fact that the city may have originally created or contributed to a dangerous condition, which was made more dangerous by the negligence of defendants, would be entirely immaterial since defendants are liable for their own negligence and are not exonerateed from liability by the fact that their negligence was only a contributing cause to the creation of the dangerous condition. See, 13B Dunnell, Dig. (3 ed.) § 7007. Thus, defendants' contention that there may be other possible causes of Mrs. Lenz' fall and that the burden rests on plaintiffs to show which of several possible causes is the proximate cause is without merit.

The trial court submitted the case to the jury upon this theory. Defendants objected only to the court's failure to give the following instruction:

"If [defendants'] acts had little or no effect on the hazard already existing, by reason of the accumulation of ice and snow, it cannot be said that [their] conduct proximately caused the injury."

We see no error in the trial court's failure to give this requested instruction. The court told the jury:

"Where there is a combination of natural and artificial causes, there is the question of what effect the defendants' acts had on the hazards or danger already existing by reason of natural accumulation of ice and snow.

"If the defendants' acts had no effect on the dangers or hazards already existing, it cannot be held that their conduct, the defendants', proximately caused the injury in question. On the other hand, if the defendants' actions increased the danger that otherwise normally existed, and such increased danger was the direct or, as we speak of it, the proximate cause of the injuries, then they would be liable."

The issues were fairly submitted by the court's instructions, which properly left the determination of the fact issues for the jury.

The evidence is conflicting, and in stating the facts we have, as required, construed the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the verdict. We have also applied the elementary rule that it is only where evidence of the absence of negligence or the presence of contributory negligence is so clear as to leave no room for an honest difference of opinion among reasonable men that the court may enter upon the province of the jury and set aside a verdict for plaintiff. Sanders v. Gilbertson, 224 Minn. 546, 29 N. W. (2d) 357. Under these principles an affirmance is required.

Affirmed.