(611 P.2d 171)

No. 50,869

VIRGINIA WILSON, *Appellant,* v. GOODLAND STATE BANK, A State Banking Corporation, *Appellee.*

Opinion filed May 23, 1980.

*Jerry D. Fairbanks,* of Whalen, McGinley & Fairbanks, P.A., of Goodland, for appellant.

*Christopher Randall,* of Turner and Boisseau, Chartered, of Wichita, for appellee.

Before FOTH, C.J., SWINEHART and MEYER, JJ.

MEYER, J.: Virginia Wilson (appellant) appeals from an adverse judgment in a slip and fall case. On March 12, 1974, appellant was on her way to work. She parked her car in front of the appellee Goodland State Bank's (bank) building. The bank is on the same side of the street as appellant's place of employment. After parking her car, appellant walked across the driveway in front of the bank building; said driveway had been constructed across the sidewalk to allow ingress and egress of automobiles by the bank's patrons using its drive-up facility. As appellant walked on this slanted ramp portion of the sidewalk, she fell on a patch of ice and broke her leg. The trial court directed a verdict in favor of the bank, from which appellant brings this appeal.

Appellant argues that the record supports an inference of neg-

ligence because ice was being allowed to form and accumulate on the driveway in front of the bank.

The scope of review on a motion for directed verdict is as follows:

"In ruling on a motion for directed verdict pursuant to K.S.A. 60-250, the court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought, and where the evidence is such that reasonable minds could reach different conclusions thereon, the motion must be denied and the matter submitted to the jury. The same basic rule governs appellate review of a motion for a directed verdict. (Following *Simpson v. Davis,* 219 Kan. 584, Syl. ¶ 3, 549 P.2d 950 [1976].)" *Care Display, Inc. v. Didde-Glaser, Inc.,* 225 Kan. 232, Syl. ¶ 5, 589 P.2d 599 (1979).

The general rule in Kansas is that an abutting property owner has no duty to keep public sidewalks free from ice and snow at all times. *Madison v. Key Work Clothes,* 182 Kan. 186, 193, 318 P.2d 991 (1957). Some jurisdictions, while recognizing the above rule, find an exception where ice does not come from natural sources, but rather is artificially created by accumulation and discharge of water from the landowner's property which causes a hazardous condition. See *Lenz v. City of Minneapolis,* 283 Minn. 180, 183, 167 N.W.2d 22 (1969). Accord, *Pritchard v. Mabrey,* 358 Mass. 137, 260 N.E.2d 712 (1970); *Strandness v. Montgomery Ward,* 199 N.W.2d 690 (N.D. 1972).

Appellant cannot avail herself of these authorities because she has made no showing that the ice she slipped upon was the result of the bank allowing water to accumulate or be discharged.

The evidence in this case is insufficient as there must be a causal relationship established between the discharge of the water and the formation of the ice. See *Lattimer v. Frese,* 246 N.W.2d 255 (Iowa 1976); *Callwood v. Consolidated Edison Co. of New York,* 286 App. Div. 838, 142 N.Y.S.2d 290 (1955); and *Jefferson v. L'Heureux,* 293 Mass. 490, 200 N.E. 355 (1936).

Appellant's testimony is not sufficient to support an inference that the water came from the bank building, especially in view of testimony by ambulance attendants that there was patchy ice all over the city from melted and refrozen snow. In cross-examination, appellant admitted she had not seen any water dripping from the top of the bank building. When asked her basis for knowledge as to what caused the ice to form at that particular location, she said, "[W]here else could it have come from?" Further, she testified she could not remember water being at that place the day before the accident at 5:30 p.m. when she walked

back to her car after work. The trial court was thus correct in concluding that there was no evidence of a causal connection between the water dripping off the bank building and the ice on the sidewalk.

The next issue is whether the record supports an inference of negligence from the bank's construction of a driveway intersecting a public sidewalk.

The general rule with regard to sidewalk defects was set out in *Pierce v. Jilka,* 163 Kan. 232, 239, 181 P.2d 330 (1947).

"It is well settled in this state, and generally elsewhere, that an abutting property owner is not liable for personal injuries sustained by pedestrians injured by stumbling or falling over defects in the sidewalk unless the defect was created by such owner and is such a defect as amounts to a nuisance. [Citations omitted.]"

This rule was followed in *Harris v. McConnell,* 194 Kan. 800, 401 P.2d 908 (1965), wherein it was held that an allegation that the defendants had constructed the sidewalk in front of their property in a manner making it unsafe for travel because it contained holes and depressions, an uneven surface, and was constructed and maintained in a defective manner, was sufficient to preclude summary judgment.

While it is clear that the bank constructed the driveway in question for its motor bank, there is no evidence that the driveway was defective.

Some courts have held that where the evidence showed an excessive slope such as 4½ inches in two feet, the evidence was sufficient to present to a jury the issue of negligence. See *Martin v. Gilmore,* 358 S.W.2d 462 (Mo. App. 1962); and *Moore v. Gasoline and Oil Co.,* 225 Mo. App. 115, 35 S.W.2d 669 (1931).

In the instant case there was no evidence whatever that the slope was unusually steep or dangerous, nor any testimony as to the degree of the slope. We conclude that there was no showing of causal negligence on the part of the bank herein. Because of such conclusion it is not necessary for us to address the bank's assertion that appellant was guilty of contributory negligence as a matter of law.

Affirmed.