NOT DESIGNATED FOR PUBLICATION

No. 115,958

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ASHLEY ROTH,
*Appellant*,

v.

BARBER EMERSON, L.C.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Douglas District Court; RICHARD M. SMITH, judge. Opinion filed March 24, 2017. Affirmed.

*Michael P. Healy*, of The Healy Law Firm, LLC, of Lee's Summit, Missouri, for appellant.

*Kelvin J. Fisher*, of Wallace Saunders, of Overland Park, for appellee.

Before MCANANY, P.J., MALONE, J., and STUTZMAN, S.J.

MALONE, J.: Ashley Roth slipped and fell on some ice on a sidewalk in Lawrence, Kansas, in front of a building leased by a law firm, Barber Emerson, L.C. She fractured her leg as a result of the fall. Roth filed a lawsuit alleging Barber Emerson was negligent in either allowing the ice to form as a result of a leaking sprinkler system or for failing to treat and clear the ice that had formed as a result of precipitation. After discovery was completed, Barber Emerson filed a motion for summary judgment, which the district court granted. Roth appeals from that ruling. Although summary judgment is to be granted with caution in negligence cases, we conclude that the district court was correct in granting summary judgment in this case for the reasons we will state herein.

1

FACTUAL AND PROCEDURAL BACKGROUND

On the morning of January 19, 2012, Roth was walking on a sidewalk located on the property at 1211 Massachusetts Street, Lawrence, Kansas, when she slipped and fell. The property in question is owned by BESCO, LLC, and leased by Barber Emerson. The fall occurred near the northwest corner of 13th Street and Massachusetts Street. There was ice on the sidewalk where Roth fell, and Roth stated that she landed on the sidewalk. Neither party is aware of any witnesses to the fall.

Roth never saw the ice, but she believed there was ice "because the ground under her was cold and slippery," and an individual that came to her aid commented about the presence of ice. Roth did not know how the ice came to be on the sidewalk or how long the ice had been there. Roth did not notice a leaking sprinkler head, although she did not look to see if one was leaking. Roth had not come across any snow or ice on her walk prior to her fall.

After her fall, Roth was assisted by Dr. N. Daniel Ranjbar, who was leaving the Barber Emerson building. Dr. Ranjbar did not see any sprinkler heads leaking on Barber Emerson's property and testified that he would have noticed if the sprinkler heads had been leaking. Likewise, Roth's sister, who took photographs of the area the day after Roth's fall, did not see any leaking sprinkler heads.

Vince Davis, a paramedic, responded to the call of Roth's fall around 9:18 a.m. Davis noticed that the roadway at the corner of 13th Street and Massachusetts was iced over and that the sidewalk at the intersection on the northwest corner also had ice on it. Davis did not attempt to figure out where the water came from that formed the ice. According to Davis, there was very little, if any, ice in the city of Lawrence at the time of Roth's fall. In fact, Davis commented that Roth had "found the only ice in Lawrence."

2

Calvin Karlin, an attorney with Barber Emerson, noticed no ice on the sidewalk north of where the incident occurred on the morning of Roth's fall. However, Karlin did notice "ice in the gutter" of Massachusetts Street. Karen Beightel, Barber Emerson's office manager, came to work that morning down Massachusetts Street and noticed "water running the whole gutter lengths." Beightel found this peculiar because it was not a wet morning.

Mark Andersen, an attorney with Barber Emerson, noticed water in Massachusetts Street when he left work on the day of the incident. Andersen found this odd as it had been dry that day. When Andersen reached the corner of Massachusetts and 13th Street, he noticed the water was frozen and the corner of the street contained ice. However, Andersen saw no ice on the sidewalk. Andersen followed the water west up 13th Street, and noticed it was being pumped out of a manhole at Kentucky and 13th Street.

There was no measureable amount of precipitation recorded in Lawrence on either January 18 or January 19, 2012. The most recent moisture reading in Lawrence was at 12:52 a.m. on January 17 when a "trace" of moisture was recorded in the precipitation report. The entire month of January produced only 0.01 inches of precipitation in Lawrence and that occurred on January 1, 2012. According to weather records, the temperature in Lawrence had reached 43 degrees around 4:00 p.m. on January 18, 2012, but the temperature fell below freezing on January 19, 2012.

A landscaping company, Willowridge, performs maintenance for the sprinkler system on Barber Emerson's property. On January 19, 2012, the sprinkler system had been shut down for the winter. Every spring, someone with Willowridge turns on the sprinkler system, inspects and adjusts the sprinkler heads, and makes any repairs that are needed. There is no evidence that Willowridge had to repair any sprinkler heads on Barber Emerson's property in the spring of 2012, when the water for the sprinkler system was turned back on.

Roth fractured her leg as a result of the fall. On July 3, 2013, she filed this action against Barber Emerson alleging three claims of negligence: (1) negligence for failing to maintain the sprinkler system which generated the ice, (2) negligence for a delay in treating the ice caused by precipitation, and (3) negligence per se citing a Lawrence ordinance requiring ice caused by precipitation to be treated or removed within 48 hours. Following completion of discovery, Barber Emerson filed its motion for summary judgment and memorandum in support on February 12, 2016. Roth filed a response in opposition to the motion for summary judgement on March 3, 2016. Barber Emerson filed a reply to Roth's response.

The district court heard arguments on the summary judgment motion on March 7, 2016. After reviewing the record and hearing arguments of counsel, the district court made extensive findings from the bench. The district court adopted a statement of uncontroverted facts consistent with the facts set forth in this opinion. The district court found that there was no evidence in the record in which a rational factfinder could find that the ice on which Roth fell was caused by precipitation. Thus, the district court concluded that the ice must have been caused by an artificial source. The district court found that Roth had failed to establish the source of the ice other than by speculation and, in particular, Roth had failed to come forward with any evidence to establish that the ice was caused by Barber Emerson's sprinkler system. Thus, the district court concluded that Barber Emerson was entitled to judgment as a matter of law on Roth's claims of negligence. The district court filed a written journal entry granting Barber Emerson's motion for summary judgment on March 25, 2016. Roth timely appealed.

ANALYSIS

On appeal, Roth claims the district court erred in granting summary judgment in favor of Barber Emerson. Roth argues that there were factual disputes in the record that should have precluded summary judgment. Roth's theory of Barber Emerson's liability on

4

appeal is the same as in district court. She contends that the only possible sources for the formation of ice were Barber Emerson's sprinkler system or precipitation from 55 hours before the fall. Roth claims that if the source was the sprinkler system, Barber Emerson created a dangerous condition making it liable. If the source was precipitation, Barber Emerson would be liable because the ice would have been present for 55 hours, and Barber Emerson would have had constructive knowledge that the ice was present. Roth also reasserts her negligence per se claim based on the municipal ordinance requiring ice caused by precipitation to be treated or removed within 48 hours.

Barber Emerson maintains that Roth failed to produce "one iota of evidence" to support its claim that the sprinkler system was the source of the ice. Barber Emerson contends that without evidence that the ice was artificially created by its sprinkler system, a directed verdict was proper. In regard to precipitation causing the ice, Barber Emerson contends there is not any evidence of precipitation being the source of the ice.

The standard for summary judgment including review by an appellate court is well known:

> "'Summary judgement is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the fact subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citation omitted.]" *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 622, 345 P.3d 281 (2015).

5

The burden of proving that no genuine issue of material fact exists is on the moving party. *Glenn v. Fleming*, 247 Kan. 296, 304, 799 P.2d 79 (1990). An issue of fact is not genuine unless it has legal controlling force as to the controlling issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment. In other words, if the disputed fact, however resolved, could not affect the judgment, it does not present a "genuine issue" for purposes of summary judgment. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 934, 296 P.3d 1106, *cert denied* 134 S. Ct. 162 (2013).

Once the moving party meets its burden to establish summary judgment, the party opposing summary judgment must come forward with specific facts showing there is a genuine issue for trial. *Mark Twain Kansas City Bank v. Kroh Bros. Dev. Co.*, 250 Kan. 754, 762, 863 P.2d 355 (1992). A party cannot avoid summary judgment on the mere hope that something may develop later during discovery or at trial. Likewise, mere speculation is insufficient to avoid summary judgment. *Kincaid v. Dess*, 48 Kan. App. 2d 640, 656, 298 P.3d 358, *rev. denied* 297 Kan. 1246 (2013). Instead, a party opposing summary judgment must actively come forward with something of evidentiary value to establish a disputed material fact. Evidentiary value means a document or testimony must be probative of the opposing party's position on a material issue of fact. K.S.A. 2016 Supp. 60-256(e)(2); *Hare v. Wendler*, 263 Kan. 434, 444, 949 P.2d 1141 (1997).

A plaintiff in a negligence action must prove four elements: (1) A duty owed to the plaintiff, (2) breach of that duty, (3) causation between the breach of the duty and injury to the plaintiff, and (4) damages suffered by the plaintiff. *Shirley v. Glass*, 297 Kan. 888, Syl. ¶ 4, 308 P.3d 1 (2013). Although summary judgments are to be granted with caution in negligence actions, a defendant is entitled to summary judgment in a negligence case if the defendant shows the plaintiff's claim is supported by no evidence. *Edwards v. Anderson Engineering Inc.*, 284 Kan. 892, 904, 166 P.3d 1047 (2007). "'Where there is an absence of evidence necessary to support an essential element of the

6

plaintiff's claim, defendants are entitled to summary judgment.' [Citation omitted.]" *Williamson v. City of Hays*, 275 Kan. 300, 307, 64 P.3d 364 (2003).

Turning to Roth's claims, the record before the district court established a disputed fact as to the precise location of the fall. Roth testified that she was on the sidewalk when she came to rest after slipping on the ice. Barber Emerson produced evidence that Roth was located in the roadway following the fall. In fact, Barber Emerson asserted that an individual that came to Roth's aid "attempted to move her out of the street" because there was fear that Roth and individuals helping her "were in danger of being hit by traffic."

This disputed fact does not preclude summary judgment because it is not material to the issue before the court. On this point, the district court considered the evidence in the light most favorable to Roth and found that she slipped on ice on the sidewalk located on Barber Emerson's property. See *Northern Natural Gas*, 296 Kan. at 934 (disputed fact which is immaterial to the issue does not preclude summary judgment). Thus, for the sake of the summary judgment motion, it is presumed that Roth slipped on the sidewalk rather than on the street and that Barber Emerson owed a duty of ordinary care to Roth to maintain its property in a safe condition under the totality of the circumstances.

The district court rejected Roth's claim for negligence based on a delay in treating the ice following precipitation because the district court found that there was no evidence in the record in which a rational factfinder could find that the ice on which Roth fell was caused by precipitation. It goes without saying that a judge is not allowed to weigh conflicting evidence when deciding a summary judgment motion. However, a defendant is entitled to summary judgment in a negligence case if the defendant shows the plaintiff's claim is supported by *no evidence*. *Edwards*, 284 Kan. at 904.

Here, the only evidence in the record of precipitation indicated there was no measurable amount of precipitation recorded in Lawrence on either January 18 or January

7

19, 2012. The most recent moisture reading in Lawrence was at 12:52 a.m. on January 17 when a "trace" of moisture was recorded in the precipitation report. The entire month of January produced only 0.01 inches of precipitation in Lawrence and that occurred on January 1, 2012. Roth testified that she had not come across any snow or ice on her walk prior to her fall. Davis, the paramedic who responded to the scene, testified that there was very little, if any, ice in the city of Lawrence at the time of Roth's fall. In fact, Davis commented that Roth had "found the only ice in Lawrence."

Based on the uncontroverted evidence in the record, no rational factfinder could find that the ice on which Roth fell on January 19, 2012, was caused by precipitation when the entire month of January produced only 0.01 inches of precipitation in Lawrence; the most recent moisture reading in Lawrence was a "trace" of moisture on January 17, 2012; and there was no snow or ice anywhere in Lawrence on that day except for outside the Barber Emerson office. The only logical conclusion from the evidence is that the water and ice had to come from an artificial source. We can make this finding as a matter of law when there is no evidence in the record to support a contrary finding. See *Drouhard-Nordhus*, 301 Kan. at 622 (summary judgment should be denied only when reasonable minds could differ as to the conclusions drawn from the evidence). Because there is no evidence in the record that the ice was caused by precipitation, this finding also precludes Roth's negligence per se claim based on the municipal ordinance requiring ice caused by precipitation to be treated or removed within 48 hours.

This brings us to Roth's claim of negligence for failing to maintain its sprinkler system, which generated the ice. The district court rejected this claim because Roth had failed to come forward with any evidence to establish that the sprinkler system was defective or caused the ice.

We again agree with the district court. The undisputed evidence established that Roth did not notice a leaking sprinkler head, although she did not look to see if one was

8

leaking. Immediately after her fall, Roth was assisted by Dr. Ranjbar, who was leaving the Barber Emerson building. Dr. Ranjbar did not see any sprinkler heads leaking on Barber Emerson's property and testified that he would have noticed if the sprinkler heads had been leaking. Likewise, Roth's sister, who took photographs of the area the day after Roth's fall, did not see any leaking sprinkler heads. On January 19, 2012, the sprinkler system had been shut down for the winter. When the landscaping company turned on the sprinkler system in the spring, it inspected the sprinkler heads and found no evidence that any of the sprinkler heads needed repair. Roth never attempted to have the sprinkler system inspected by an independent contractor.

Once the moving party meets its burden to establish summary judgment, the party opposing summary judgment must come forward with specific facts showing there is a genuine issue for trial. *Mark Twain*, 250 Kan. at 762. A party cannot avoid summary judgment on the mere hope that something may develop later during discovery or at trial. Likewise, mere speculation is insufficient to avoid summary judgment. *Kincaid*, 48 Kan. App. 2d at 656. Instead, a party opposing summary judgment must actively come forward with something of evidentiary value to establish a disputed material fact to avoid summary judgment. *Wendler*, 263 Kan. at 444.

Roth claims the ice had to come from the sprinkler system because "[a]ll [other] potential causes of the ice have been ruled out." In response to Roth's position, Barber Emerson cites *Wilson v. Goodland State Bank*, 5 Kan. App. 2d 36, 611 P.2d 171 (1980). In that case, the plaintiff slipped on ice and claimed it was caused by water coming from the bank building. The plaintiff presented no evidence that the water had come from the bank building but asserted, "'[W]here else could it have come from?'" 5 Kan. App. 2d at 37. This court determined that in order to recover for injuries due to an accumulation of ice and snow, a plaintiff must establish a causal connection between an artificially created accumulation and discharge of water from the landowner's building and the ice which caused the injury. 5 Kan. App. 2d at 37. This court concluded that the evidence in the

9

case was insufficient to create "a causal connection between the water dripping off the bank building and the ice on the sidewalk," and upheld the district court's directed verdict in favor of the bank. 5 Kan. App. 2d at 38.

Barber Emerson came forward with evidence of a likely source of the water that formed the ice on which Roth fell on an otherwise dry day in Lawrence—water being pumped out of a manhole at Kentucky and 13th Street that was flowing down the gutter and causing ice to form at the intersection of 13th Street and Massachusetts near the location of Roth's fall. At the summary judgment stage of the proceedings, it is not the court's function to weigh conflicting evidence and determine the most likely artificial source of the water that caused the ice. But where there is *no evidence* that Barber Emerson's sprinkler system was defective or caused the ice, Roth's negligence claim as to the defective sprinkler system can be resolved as a matter of law.

In sum, Roth acknowledges that her claim against Barber Emerson is not based on strict liability. Instead, Roth's claim is based on negligence and she must prove that Barber Emerson breached its duty of ordinary care. At the summary judgment stage of the proceedings, Roth must come forward with something of evidentiary value to support her claims. There is no evidence in the record in which a rational factfinder could find that the ice on which Roth fell was caused by precipitation, meaning it must have been caused by an artificial source. Roth has produced absolutely no evidence supporting her claim that Barber Emerson's sprinkler system was defective and caused the ice. Based on the record, there were no disputed material facts and Barber Emerson was entitled to judgment as a matter of law on Roth's claims of negligence. Thus, we conclude the district court did not err in granting Barber Emerson's motion for summary judgment.

Affirmed.